# GARVEY *v.* THE PEOPLE.

*(Supreme Court of Colorado, May 11, 1883—Error to the District Court of Arapahoe County).*

1. EX POST FACTO LAW. A law, passed after the commission of a crime, which alters the situation of the accused to his disadvantage, is *ex post facto*, both the Federal and State Constitutions.

2. PLEA OF GUILTY IN CHARGE OF MURDER—EFFECT OF. No greater effect should be given the ordinary plea of guilty, under the statutes of Colorado as they existed prior to 1881, than that accorded to a general verdict of guilty, which was conviction of the lower grade of murder, and could not be punished by the infliction of the death penalty.

3. RIGHT OF THE ACCUSED—CANNOT BE ABRIDGED. As the law stood in 1881, when the alleged crime was committed, any person indicted for murder had it within his power to avoid all risk of a capital sentence by pleading guilty. The act of March 1, 1881, changed the law in this respect to the disadvantage of those indicted for murder previously committed, and is therefore *ex post facto* as to such. The rights of prisoners cannot be thus abridged.

4. REPEAL WITHOUT SAVING CLAUSE. The sections of the statute (268, 269, Gen. Laws) dividing murder into two grades and specifying the punishment to be awarded those convicted under each, having been expressly repealed by the act of 1881, without a saving clause, there could be no conviction under the repealed sections.

BECK, C. J. At the March term, 1881, of the Weld County District Court, the plaintiff in error was indicted for the murder of one George Wolf. The crime was charged to have been committed in said county on the 23d day of May, 1880. The prisoner plead not guilty to the indictment. A change of venue was applied for and the venue changed to Arapahoe county, where the cause was tried at the special November term of the District Court of said county, resulting in a verdict of "guilty of murder as charged in the indictment." Upon this verdict the prisoner was sentenced to imprisonment at hard labor in the State Penitentiary for the residue of his natural life.

It is assigned for error that the Court erred:

*First*—In denying motion for continuance.

*Second*—In denying motion in arrest of judgment.

*Third*—In giving judgment on the indictment, no offense being charged therein, and there being no law to warrant judgment upon the said indictment.

Only the *second* and *third* assignments are relied upon for a reversal, and no objection is pointed out to the form of the indictment.

Two principal propositions are laid down and discussed by counsel for the prisoner, viz.:

*First*—That after the commission of the alleged offense and before trial, the law applicable to such cases was so amended as to change the rule of evidence and increase the punishment.

*Second*—That the law under which the offense was committed was repealed before trial, without a saving clause, and there was no law in existence when the trial was had, against which the defendant had offended.

As the law stood prior to 1870, there was in Colorado but one grade of murder, and one mode of punishing the offense, which was death by hanging. Sections 20 and 183, Chapter 22, Revised Statutes, 1868.

Section 20 provides that "the punishment of any person or persons convicted of the crime of murder shall be death."

In 1870 the Legislature amended section 20 as follows:

SECTION 1. That section 20 of said chapter 22 of the Revised Statutes of Colorado Territory shall be hereafter construed so that the death penalty for the crime of murder shall not be ordered to be inflicted by the Courts of the Territory, unless the jury trying the case shall, in their verdict of guilty, also indicate that the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony.

SEC. 2. Any person hereafter found guilty of the crime of murder by the verdict of a jury, without any indication in such verdict whether the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony, shall be sentenced to confinement in the penitentiary for and during such person's natural life, which confinement may be with or without hard labor, or both, at the discretion of the Court. Laws 1870, pp. 70, 71.

The above sections 1 and 2 of the act of 1870 were inserted in chapter 24 of the compilation of the statutes in 1877, as sections 268 and 269 of the criminal code, General Laws, 1877, pages 339 and 340, and are referred to by the last mentioned numbers in the legislation of 1881.

The law remained as thus amended until the passage of the act of March 1, 1881, when sections 268 and 269 were repealed,

and two other sections enacted to stand in lieu thereof, numbered respectively section 3 and section 4 of said act, as follows:

SEC. 3. Section 268 of said chapter is hereby repealed, and the following shall stand in lieu thereof as section 268:

The death penalty for the crime of murder shall not be ordered to be inflicted by the Courts of this State in any case unless the jury trying the case shall in their verdict of guilty also indicate that the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony, or unless the jury in case where the defendant pleads guilty, and the jury to whom the question of deliberation or premeditation, or that the killing was done in the perpetration or attempt to perpetrate some felony, shall be submitted as hereinafter provided, shall in their verdict upon that question indicate that the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony. In case where the party indicted for the crime of murder shall plead guilty thereto and persist therein, the Court thereupon shall impanel a jury, as in other cases, to whom shall be submitted and who shall hear and determine the question and vindicate [indicate] in their verdict whether or not the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony; and in such case that question and none other shall be submitted to the jury.

SEC. 4. Section 269 of said chapter is hereby repealed, and the following shall stand in lieu thereof as section 269:

Any person hereafter found guilty of the crime of murder by his plea of guilty, in case such plea is received, or by the verdict of a jury, where a trial is had without any confession in such plea, or indication in such verdict whether the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony, shall be sentenced to confinement in the penitentiary for and during such person's natural life, which confinement may be with or without hard labor, in the discretion of the Court. Laws 1881, pp. 70, 71.

In support of the proposition that the legislation of 1881 had the effect to change the rule of evidence and to increase the punishment, the prisoner's counsel make the point that, as the law stood at the time the offense was committed, a prisoner had the right to plead guilty, and by so doing escape all hazard of a death sentence. This plea, they say, was conclusive of the prisoner's innocence of murder in the first degree, and conclusive of his guilt in the second degree; that the Court was bound to accept the plea, and to render judgment thereon

for the lower grade of murder, without an examination of facts for the purpose of ascertaining the degree of guilt, and that such was the practice adopted by the District Courts.

Many authorities are cited in support of the propositions that a plea of guilty to an indictment for homicide only confesses the guilt of the accused as to the lowest grade of the offense; that it authorizes the same judgment as does a general verdict of guilty returned by a jury, which is held to be responsive to the lowest degree of the crime charged in the indictment.

These propositions are fully supported by the authorities cited as to cases wherein the indictment is in the common law form. 2 Bish. Criminal Procedure, Sec. 566, note 4, and cases cited.

There is a strong reason why no greater effect should be given the ordinary plea of guilty, under the statutes of the State as they existed prior to the amendment of 1881, than that accorded to a general verdict of guilty. The reason is that the statutes required the grade of the offense to be ascertained by the verdict of a jury before the death penalty could be ordered to be inflicted.

To authorize a sentence of death the jury were required to find and indicate in their verdict that the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony. But no provision was made for submitting to a jury the question of the grade of the offense when the defendant pleaded guilty. It was not required that these circumstances of aggravation should be charged in the indictment, but on the other hand the common law form of indictment was prescribed as sufficient in all murder cases. Laws 1879, page 50.

Under these statutes a verdict of "guilty in manner and form as charged in the indictment," was in all cases a conviction of the lower grade of murder. Although the indictment charged that it was committed with premeditation, or under any of the other circumstances which constitute murder of the higher grade, the effect of a general verdict of guilty was the same. The only sentence that could be awarded was imprisonment,

with or without hard labor, in the penitentiary for the life of the offender.

We can conceive of no satisfactory reason why a plea of "guilty in manner and form as charged in the indictment" should not have the same effect as the verdict of a jury in the same form.

Whether the Court was bound to accept such plea and to render judgment of imprisonment thereon, without instituting further proceedings to ascertain the degree of guilt, may admit of some doubt, but that such was the practice must be conceded. It was under this construction of the statute that Philomena Gallotti and six or seven other Italians were sentenced to confinement in the penitentiary for life on their plea of guilty for the murder of the four Italian musicians. And while it was generally deplored that the statute permitted the perpetrators of that horrible assassination to escape the severest penalty of the law, yet we are not aware that the soundness of the ruling has been questioned. Whether correct or not, however, such being the recognized practice, the effect was the same as if it had been duly authorized; persons indicted for murder could avail themselves of it without risk, since the statutes gave neither an appeal or writ of error in favor of the people. Even if they did, it would probably be unavailing in such a case. The constitution of this State provides that no person shall be twice put in jeopardy for the same offense. Where a prisoner is arraigned upon a sufficient indictment, his plea has been accepted and recorded, not only as a confession of his guilt, but as evidence of the degree of guilt and final judgment entered thereon; a new trial subjecting him to the hazard of a conviction for a higher grade of the offense would not only appear to be in violation of the constitution, but in conflict with the great weight of authority on the point. (1 Bish. Criminal Laws, Sec. 992, 1024, and cases cited.) It is evident that the Legislature recognized this construction of the law as being settled in accordance with the practice referred to, from the changes made therein by that body in 1881. These changes relate only to the effect of the plea of guilty.

The intent of the Legislature in this behalf is not as intelligibly expressed as it might be, but that it was intended to

change the effect heretofore accorded the plea of guilty so that the death penalty might be imposed, notwithstanding the plea, is apparent.    This is the only construction which the language employed is susceptible of, that will not produce absurd consequences.    Judge Ranney says, in *Debolt* v. *The Ohio Life Insurance and Trust Company*, 1 Ohio State, 563, that "the Legislature will not be presumed to have intended an absurd or unjust consequence."    Chief Justice Shaw said : "We can only ascertain the legal intent of the Legislature by the language they have used, applied and expounded conformably to the settled and well known rules of construction."    (*Commonwealth* v. *Kimball*, 21 Pick., 376.)    Mr. Sedgwick says, that in construing a statute Lord Coke's rule is to be kept in view, and the Judges are to inform themselves of the previous state of the law, and of the mischiefs which the statute to be construed were passed to obviate.    (Sedgwick Stat. and Constitutional Law, page 202.)    Giving effect, then, to the obvious meaning of the statute, we approach the inquiry, what effect did this change in the law produce upon the legal rights of the prisoner?    As the law stood on the 23d day of May, 1880, when the murder was committed, any person indicted for murder had it within his power to avoid all risk of a capital sentence by pleading guilty.    In November, 1881, the time of the trial, this privilege did not exist; it had been taken away by the act of March 1, 1881.

The constitution of the United States prohibits each State from passing *ex post facto* laws.    The mandate of our State constitution is that no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operations   *   * shall ever be passed by the General Assembly.

The leading case upon laws of this character is *Calder* v. *Bull*, 3 Dallas, 386, decided by Justice Chase in the Supreme Court of the United States, in 1798.    He said : "I will state what I consider *ex post facto* laws within the words and the intent of the prohibition: 1. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action.    2. Every law that aggravates a crime and makes it greater than it was when committed.    3.    Every law that changes the punishment

and inflicts a greater punishment than the law annexed to the crime when committed.  4. Every law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender."

It is argued with much plausibility by the prisoner's counsel that the statute has been so changed that what was before received as conclusive evidence of innocence, as to the higher grade of the offense, viz., a plea of guilty, has, under the new act, no effect as evidence for the prisoner at all.

In a recent opinion in the Supreme Court of the United States, by Mr. Justice Miller, this subject was very fully considered, and the most important cases cited and reviewed. Among the cases cited approvingly, and which seems peculiarly appropriate to the present case, is *United States* v. *Hall*, 2 Washington, C. C. O., 366, afterward affirmed by the Supreme Court in 6 Cranch, 171.

Mr. Justice Washington said, in this case, that "an *ex post facto* law is one which in its operation makes that criminal which was not so at the time the action was performed, or which increases the punishment, or, in short, which in relation to the offense or its consequences, alters the situation of a party to his disadvantage."  By way of application to the case on trial, which was for the violation of the embargo laws, he added:  "If the enforcing law applies to this case there can be no doubt that so far as it takes away or impairs the defense which the law had provided the defendant at the time his bond became forfeited, it is *ex post facto* and inoperative."

Another case cited by Mr. Justice Miller, and which illustrates the extent to which the doctrine is carried, is that of *Commonwealth* v. *McDonnough*, 95 Mass., 581.  "It was held," says the learned Justice, "that a law passed after the commission of the offense of which the defendant stood charged, which mitigated the punishment, as regarded the fine and maximum of imprisonment that might be inflicted, was an *ex post facto* law as to that case, because the minimum of imprisonment was made three months, whereas, before there was no minimum limit to the Court's discretion.  This slight variance in the law was held to make it *ex post facto* and void as to that case,

though the effect of the decision was to leave no law by which the defendant could be punished, and he was discharged, though found guilty of the offense."

Among the other cases cited and referred to in this able opinion of Mr. Justice Miller, are: *Hartung* v. *The People*, 22 New York, 95; *In re Petty*, 22 Kansas, 477; *State* v. *Keith*, 63 North Carolina; *State* v. *Tweed*, 25 Texas Supplement, 66; *Shepherd* v. *The People*, 25 New York, 406; *Green* v. *Shumway*, 39 New York, 418.

The case above referred to as being recently decided by the Supreme Court of the United States was that of *Kring* v. *State*, error to the Supreme Court of the State of Missouri, reported in *Central Law Journal*, April 20, 1883. Kring was indicted for murder, and, upon his plea of guilty, was convicted of murder in the second degree and sentenced to twenty-five years imprisonment. He appealed and the judgment was reversed. By the law of Missouri, in force when the homicide was committed, this conviction was an acquittal of the charge of murder in the first degree, but the law was subsequently so changed by an amendment to the State constitution that when a judgment on a plea of guilty should be lawfully set aside, it should not be held to be an acquittal of the higher crime. He was subsequently tried several times before a jury, his plea having been set aside by the trial Court and a plea of not guilty entered by order of the Court, and upon the last trial he was found guilty of murder in the first degree and sentenced to be hanged. The judgment was affirmed, first by the Court of Appeals and afterward by the Supreme Court of the State, these Courts taking the position that the change in the law having been effected before the plea and judgment were entered, of guilty of murder in the second degree, and that as the new law was in force when the conviction on that plea was had, its effect, as to future trials in that case, must be governed by that law; that the change was not a change in crimes, but in criminal procedure, and that such changes are not *ex post facto*. Referring to this ruling, Judge Miller asks and answers the pertinent question: "Can any substantial right which the law gave the defendant at the time to which his

58

guilt relates be taken away from him by *ex post facto* legislation, because in the use of a modern phrase it is called a law of procedure? We think it cannot." In another part of the opinion he says: "Whatever may be the essential nature of the change, it is one which to the defendant involves the difference between life and death, and the retroactive character of the change cannot be denied." The judgment of the State Court was reversed upon the ground that "the provision of the constitution of Missouri which denies to the plaintiff in error the benefit which the previous law gave him, of acquittal of the charge of murder in the first degree on conviction of murder in the second degree, is as to his case an *ex post facto* law within the meaning of the constitution of the United States."

Applying the principles of the above authorities to the questions raised by the assignments of error in the case at bar, it would seem that the act of March 1, 1881, has changed the law of this State to the disadvantage of those indicted for murders previously committed. These principles have no reference to convictions under a statute before its repeal.

Attorney General Toll takes the position that the law of 1870 was substantially re-enacted by the later statute, which had the effect to continue the law in force without intermission, citing Bishop on Stat. Crimes, section 181; *State* v. *Gumber*, 37 Wisconsin, 298, and several other Wisconsin cases to the same effect, and a few other cases. Upon this hypothesis he argues that the recent legislation did not change the law applicable to the case of the plaintiff in error, upon his plea of not guilty.

Were it conceded that the authorities cited are sound, the answer to this argument is that the pre-existing law relating to the crime of murder and its consequences was not substantially re-enacted. On the contrary, a substantial defense to murder in the higher grade was wholly taken away by the change made in respect to the plea of guilty. This plea, as it existed under the former law, has now no existence at all, practically, so far as this offense is concerned. Formerly it operated as an acquittal of the highest grade of the offense. As it now exists it is more unfavorable to the party pleading it than the plea of not guilty, for whereas upon a plea of not guilty there is a chance for acquittal, the present plea of guilty in-

sures conviction as to the lower grade, leaving the accused to take the same risks of conviction of the higher grade as under the other plea.

This defense, under the former practice, was available as to the crime of murder and its consequences, and the accused had the legal right to avail himself of the immunity from a death sentence at any time before conviction.    It cannot militate against the plaintiff in error that he did not at his trial seek to take advantage of a defense which had previously been taken away from him.

Again, the two sections of the act of 1870, dividing murder into two grades, and specifying the punishment to be awarded those convicted under each, were expressly repealed by the act of 1881, without a saving clause, and two other sections were substituted therefor.    There could, therefore, be no conviction under the sections repealed.    *Hirschberg* v. *The People*, 2 Colorado Law Reporter, 381.

All that remained unrepealed of the law of homicide (save the provisions relating to manslaughter and its punishment) were the sections defining the crime of murder, providing the form of indictment, and imposing the death penalty upon such as should be convicted.    It is clear that the accused could not be convicted of murder under those provisions alone, since the punishment for that offense had been changed from imprisonment *or* death, as the proof might warrant, to *death* only, an increase of the punishment which made the law obnoxious to the constitutional inhibition.

Nor could he be legally convicted of murder in the higher degree under the new law, considered and construed in connection with the unrepealed sections of the old law, as suggested by the Attorney General, for the reason that this law deprived the prisoner of a right of defense existing in his favor at the time of the commission of his crime, which, if employed, would have saved his life.    This right did not exist at the time of the trial, and the people, whose representatives had taken it away, could not be heard to say that the prisoner would not have availed himself of it.

If it be sought to convict him of murder of the second grade only, an anomaly in statutory construction and procedure is encountered.    The indictment sufficiently charges murder of

the higher grade. The law prescribes the death penalty only, for this degree of the offense; there is no plea which of itself authorizes a conviction in a lower degree, and yet the jury must be instructed, contrary to the letter and spirit of the law, that they cannot find the prisoner guilty of murder in the higher degree.

The statute will not bear such a construction. The attempt to apply the statute to past offenses develops as to them its retroactive character.

There seems to be no escape from the conclusion that the change produced in the law by the act of 1881, in relation to a crime of the grade of murder, previously committed, alters the situation of a party to his disadvantage, and makes the law *ex post facto*, both under the Federal and State constitutions. This is substantially the conclusion reached by the Supreme Court of the United States in *Kring* v. *State, supra.* The language of the Court is: "We are of the opinion that any law passed after the commission of an offense, which, in the language of Washington, in *United States* v. *Hall*, in relation to that offense, or its consequences, alters the situation of a party to his disadvantage, is an *ex post facto* law, and in the language of Denio in *Hartung* v. *The People*, no one can be criminally punished in this country except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, and which existed as a law at the time."

The conclusion arrived at in this case was reached after a careful examination of authorities and after mature deliberation. In the language of the Supreme Court of Massachusetts, "though it is desirable that all offenders against our penal laws should be punished, yet it is better that one should occasionally escape than that the fundamental principles of the criminal law should be violated." *Commonwealth* v. *McDonough, supra.*

As the amendments to the criminal code made by the Legislature in 1883 have no application to this case, they have not been referred to in this opinion.

The judgment is reversed and the cause remanded.

*Judgment reversed.*

*Wells, Smith & Macon*, for plaintiff in error.

*C. H. Toll*, for defendant in error.