# EX PARTE BURNHAM.

*(District Court for El Paso County, July 14, 1884—On Petition for Habeas Corpus.)*

1. HABEAS CORPUS—WARRANT OF COMMITMENT MUST BE CERTAIN AS TO PLACE. A warrant of commitment must be certain and definite as to the place in which the defendant is to be confined. A warrant directing that the defendant be confined in "the calaboose or jail of El Paso county, or such other place as the city council of said city shall designate," is bad.

2. SAME—SAME—AS TO PAYMENT. So of a warrant which commands that the defendant be held until the fine be paid *in labor.* This would negative the right to pay in money. This objection is not obviated by the words, "or until he shall have otherwise been discharged by law."

3. SAME—FINE AND COSTS—MAXIMUM. The statute limits the jurisdiction of a justice of the peace, in the imposition of fines, to the maximum sum of $300. This cannot be exceeded by adding thereto attorney fees and costs as part of the penalty.

4. SAME—JUDGMENT should be so plain and definite that it could not be misunderstood.

5. SAME—CITY ORDINANCE—YEAS AND NAYS ON PASSAGE OF. The statutes of Colorado require the yeas and nays to be called and recorded upon the passage and adoption of any ordinance. This provision is mandatory, and an ordinance not so passed is void, and can confer no jurisdiction on any court or tribunal for any purpose.

HARRISON, J.

The petitioner was charged before a justice of the peace with a violation of an ordinance of the city of Colorado Springs, and was, upon conviction thereof, imprisoned. He now seeks to be released under the *habeas corpus* act. The complaint or affidavit which is the foundation of the action before the justice, alleges that on or about the 23d day of January, A. D. 1884, within the corporate limits, section 1 of an ordinance of said city, entitled "An Ordinance relating to Intoxicating and Malt Liquors," passed on the 17th day of April, 1878, was violated by petitioner; that defendant has just and reasonable grounds to suspect and believe that one T. H. Burnham did, on or about said 23d day of January, 1884, violate said ordinance and section thereof. The judgment was as follows: "It was considered and adjudged by the Court that the defendant, T. H. Burnham, was guilty as charged in the complaint, and it was further considered and adjudged by the Court that said defendant, Thomas H. Burnham, do pay a fine of $75 and

costs of this suit; and it was further considered and adjudged by the Court that if the defendant, Thomas H. Burnham, shall neglect or refuse to pay said judgment and costs of suit, he shall be confined in the city jail of said city of Colorado Springs for a period not to exceed ninety days, or until said judgment and costs are paid, in accordance with section 12 of an ordinance of said city of Colorado Springs, relating to intoxicating and malt liquors, passed on the 17th day of April, 1878." Among the items taxed as costs is the sum of $15 for attorneys' fees. The warrant of commitment is directed to the city marshal of the city of Colorado Springs, or to any constable of said county of El Paso, and reads as follows:

Whereas, the people of the State of Colorado have obtained judgment before the undersigned, John Pixley, justice of the peace of the city of Colorado Springs, county and State aforesaid, against Thomas H. Burnham, for a violation of an ordinance of said city, for the sum of seventy-five dollars, together with forty and fifty-five hundredths costs in his behalf expended; these are therefore to command you to levy said debt and costs of the goods and chattel or other property of the said Thomas Burnham within the said county of El Paso, and expose the same to sale agreeably to law; and for want of sufficient property whereon to levy the said debt and costs, you are commanded to take the body of the said Thomas H. Burnham into your custody and convey him to the calaboose or jail of El Paso county aforesaid, or such other place as the council of said city shall designate. The kseper thereof is hereby commanded to receive him, and him safely keep until the debt shall have been paid by labor, according to the ordinance of the city of Colorado Springs, or until he shall have been otherwise discharged by due course of law; and you are also commanded to make return of the execution within 30 days.

The respondent returns that by virtue of the proceedings and warrant set forth in the petition, he hath hitherto detained petitioner in the city jail, as by said writ commanded, etc.

It is contended in behalf of the petitioner that the warrant of commitment is illegal and void on its face, that the judgment is void on its face, and, further, that the ordinance under which the conviction was had was never legally in force, and that for that reason also the judgment is void.

We will consider first the objections urged against the warrant of commitment. The mandate of the writ is, that de-

fendant be taken to the calaboose or jail of El Paso county, or such other place as the city council shall designate. Did this mean that the respondent might, at his election, take the defendant either to the jail or to the calaboose? If such is the meaning, then the warrant, it seems to me, is insufficient. It should not be left to the officer acting under the commitment to determine where a defendant shall be confined. The place of confinement should be designated in the judgment itself. It is part of the judgment, and being such it should be definite and certain and should be incorporated in the record of the judgment. It should not be placed in the power of an executive officer to select the place of confinement, nor should he be authorized, at his own election, to imprison a man either in one place or in another, thereby having it in his power under the commitment to spirit a prisoner from one place of confinement to another, and thus avoid the service of a writ of *habeas corpus.* Is it not the right of a defendant to know from the warrant and judgment where he is to be imprisoned? We think so, certainly. When he demands an investigation of the causes of his imprisonment, under the *habeas corpus* act, or if that be done by any one else in his behalf, it should certainly appear from the record of the proceedings against him whether the writ is to be served on the keeper of the city calaboose, on the county jailer, or on some one else. There are other reasons for this, but it is unnecessary to recount them here. In a statute passed in the reign of Henry IV it was recited, "That divers constables of castles within the realm, being assigned justices of the peace by the king's commission, had by color of such commission used to take people to whom they bore evil will and imprison them within the said castles until they have made fine and ransom with said constables for their deliverance, and it was therefore enacted that none be imprisoned by justices of the peace, but only in the common jail." Of course no imputation is here made against the respondent, and none is intended. But the good character of an officer is no reason for making exceptions to a law which has foundation in the fact that some men have done wrong, and that it is human to err. And if it be said that the word "jail" is used as an appositive, and that the words "jail" and "calaboose" have the same signification, and that by the words "calaboose or jail of El

Paso county" is meant the county jail, then the answer to this is, that the judgment requires that the defendant be confined in the city jail of the city of Colorado Springs. And it will certainly not be contended, when a judgment requires that a defendant be imprisoned in one place, that the warrant can direct his imprisonment in another. But this is not all. The warrant directs the officer to convey the prisoner to some place, as before stated, or such other place as the council of said city shall designate. This is clearly bad. Section 3317 of the Statutes of 1883 authorizes the imprisonment to be in the county jail, calaboose or other place provided by the city. The warrant should direct the officer to commit the prisoner to the place already provided, not to such place as might thereafter be designated by the council. As heretofore stated, the place of confinement is as much a part of the judgment as the term of confinement. The law requires the term of imprisonment to be fixed, definite and certain, and the place of confinement should be definitely fixed. If the city may change the place of confinement, it may also change the term of imprisonment, which cannot be said. The judgment of the justice is presumed to be adjusted according to the character of the offense committed and the punishment to be suffered. Whether the place is one where the prisoner will receive such treatment as his offense deserves or such as humanity demands, or whether it is a loathsome and disease-breeding dungeon, it seems to me is a matter that ought to be, and doubtless is, taken into consideration by the justice when fixing the sentence. The defendant ought to know where he is to be imprisoned; the community ought to know it, as the imprisonment of a fellow citizen is a matter of public concern. The officers who are commanded to execute the process should, for their own protection, be clearly informed what their duty is. They should not be compelled to decide this for themselves. We think the place of imprisonment should be provided beforehand by the council, and that it should be clearly and expressly designated in the warrant, and that the command of the warrant be in accordance with the judgment. Each of these requirements is disregarded in the warrant before us.

Another command of the warrant is: "The keeper thereof is hereby commanded to receive him (the defendant), and him

safely keep until the debt shall have been paid by labor, according to the ordinance of the city of Colorado Springs, or until he shall have been otherwise discharged by due course of law." What keeper? The keeper of the calaboose, the keeper of the jail, or the keeper of some place that might thereafter be designated by the city? The keeper, whoever he is, is commanded to imprison the defendant until the debt shall have been paid by labor. This cannot be done; the statute says: "Any person, upon whom any fine or penalty shall be imposed, may be committed until such fine, penalty and cost shall be fully paid." (Sec. 3317 of 1883.) This means a money payment, but the mandate is, that the keeper require payment in labor, and none other, and the defendant, according to the writ, must be confined until payment is made in that manner. The keeper is not authorized or allowed to accept money. The fact that the statute provides how the fine may be paid in labor, does not affect this question. The defendant, it seems to me, has the right to pay either in money or in labor, at his election, and upon payment or tender of payment in money he is entitled to release. And it seems to me that a general direction to the keeper to receive payment in labor, "according to the ordinances of the city," is too vague and uncertain. It leaves it to the keeper to construe the ordinances, and to determine according to his understanding of them when, if ever, the defendant becomes entitled to his release. All this should be contained in the judgment and in the commitment. This objection is not avoided by the words, "or until he shall have otherwise been discharged by law," contained in the writ. The prisoner is to be kept in the manner prescribed by the writ, until discharged in some other manner by law. These words are usual in such writs, but unnecessary and useless. The defendant must pay his fine and costs in labor; but if otherwise, by operation of law, the defendant is discharged, he must be released whether these words are used or not. They add nothing to the other words of the writ, and in themselves mean simply that the keeper must act in accordance with the law. Of course, if he is otherwise discharged by law, the matter is at an end. There is no direction in the writ that the defendant is to be discharged at the expiration of ninety days. According to the terms of the writ

(and these must guide the keeper, when they can be understood) the imprisonment may be forever. This is expressly prohibited by the statute. In *Howard* v. *People*, 3 Michigan, 207, it was held that when a justice, having power to imprison for a limited time, adjudged the defendant to pay a fine and stand committed until paid, the judgment was held void. And when the act under which the prisoner was convicted required the imprisonment to be for three months, and the commitment was "until discharged by due course of law," he was discharged by the Court of King's Bench. The Court said that he was committed in execution, and the exact time ought to be specified. *The Queen* v. *Green*, Fort.

In Bacon's Abridgment the author, speaking of the commitment, says: "It ought to set forth the crime, with comment certainly whether the commitment be by Privy Council, or any other authority; otherwise the officer is not punishable by reason of such *mittimus* for suffering the party to escape, and the Court before whom he is removed on *habeas corpus* ought to discharge or bail him; and this, if not only held where no cause at all is expressed in the commitment, but also where it is so loosely set forth that the Court cannot adjudge whether it were reasonable ground of imprisonment. Every such *mittimus* ought to have a lawful conclusion, namely, that the party be safely kept until delivered by law, or that he be kept until further order, which shall be intended the order of law. But the omission of these words, 'until he be delivered by due course of law,' makes no nullity in the *mittimus* of a justice of the peace, for they are no more than the law says. A commitment of one for carrying goods without a university license, 'until he goes security to observe the statutes of the university,' is bad."

"A commitment to the workhouse under the sentence of a justice, until released by order of law, is erroneous because for an indefinite time." (Sec. 3, Crom., 502.) "So is a commitment to prison generally, not specifying any jail or directed to any particular jailer." Also, a commitment grounded on an act of Parliament ought to be conformable with the method prescribed by such statute, as where the church wardens of North Hampton were committed on the 43 Eliz., Cap. 2, and the warrant concluded in the common form, viz: "Until they

be duly discharged according to law;" but the statute appointing that the party should there remain until he should account, for want of such conclusion they were discharged. "So, when one Bray was committed by the commissioner of bankruptcy for refusing to answer, and they concluded their warrant, viz: 'Until he conform himself to our authority and be thence delivered by due course of law;' and upon return of a *habeas corpus* was discharged, for the statute only empowers them to commit until he submit himself to be by them examined." Bacon's Abridgment, Vol. 2, page 254.

It seems to me to follow from the examination of these authorities, that the warrant is clearly defective in the substantial forms required by law.

It is argued that the judgment is void because the sum of $15 is taxed as costs or attorneys' fees and made part of the judgment. It does not appear from the record before me whether this is required or authorized by ordinance or not, but it was conceded in the argument that there was no statute covering the point. In the absence of a statute the justice had no authority to do this, whether required so to do by ordinance or not. The city has no right to enact that the sum of $300 may be assessed as a fine, and that a further sum may be assessed as costs. No matter whether the amount to be assessed against a defendant be designated as fine or costs, if the ordinance attempt to give to a justice the power to assess a sum in excess of $300 against a defendant, it is void. By the constitution the jurisdiction of justices is limited to cases where the amount in controversy does not exceed $300. The statute provides that a fine for violation of an ordinance shall not exceed $300. The penalty for violation of this ordinance under which the judgment was rendered may, by the terms of the ordinance, be no more than $300 nor less than $50. Can the city authorize the justice to fine the defendant $300 as a fine and $15 as costs or attorneys' fees? We think not. If it has the right to say that the justice shall or may tax, in addition to the fine of $300, the sum of $15, they may increase the amount to $1,500, and there is no limit. The statute says that the penalty shall not be in excess of $300. Can they legalize the excess by calling it costs? We think not. It is true that in this case the judgment was that the defendant pay $75 as fine and

$15 only as costs, but this does not alter the matter.   In *Commonwealth* v. *Albro*, 1 Gray (Mass.), 48, Chief Justice Shaw, after holding that a certain statute concerning the manufacture of liquors was void, said:

"It may be proper to remark upon these proceedings that the complaint and warrant are so framed, and the proceedings so conducted, as, if practicable, to avoid many of the objections to the constitutionality of the statute.   But these proceedings do not remove the objections to the statute.   Therefore, if particular magistrates and courts, perhaps feeling the force of these objections and adopting expedients to avoid them, or diminish their force, take precautions for that purpose not required, perhaps not permitted, by the actual terms of the statute, this cannot justify a judgment under so defective a law.   The statute is to be carried into effect by hundreds of magistrates and officers, and if it fail in those qualities and characteristics required by the constitution to give it the force and afford the full protection of the law to all those who act under it, it is so far void, and cannot be made good in any particular case by attempts to supply its defects."

It seems to us that the justice was not authorized to assess this sum as costs, even if directed by ordinance so to do.   But we are not prepared to say that the judgment is void by reason of such assessment.

The judgment itself is not rendered in clear and unmistakable terms.   It should be so plain and definite that it could not be misunderstood.   One provision of it is, that the defendant be confined until the said judgment and costs are paid in accordance with section 12 of an ordinance of said city.   This is clearly insufficient.   The ordinance or the legal effect should be set out in the judgment, and the warrant should specify what had been adjudged and what was required of the officer to whom it was directed.   But here all this is left to the decision of the keeper of the prison.   He must examine the ordinance and decide what his duties are.   He should be commanded to do, not to decide.   As a matter of fact, it was conceded in the argument that there was no section 12, as referred to in the judgment.   For these reasons I am inclined to think the judgment void, but the decision of that point is not necessary.

The judgment is, that the defendant "was guilty as charged in the complaint." The complaint charges that defendant violated section 1 of an ordinance passed on the 17th of April, 1878. A certified copy of this ordinance is attached to the complaint, and in this the following entry appears: "An adjourned meeting of the city council was held April 17th, 1878, at 7:30 p. m., a full board present. The following ordinances were then adopted by a unanimous vote of the council:"

Then follows the ordinance in question. Petitioner complains that the ordinance is void, because section 3324 of the Statutes of 1883 requires that on the passage of every by-law or ordinance, etc., the "yeas and nays shall be called and recorded." Counsel for respondent cite *Barr* v. *Village of Auburn*, 89 Ill., 36, in support of the validity of the ordinance. That case is not in point. The statute of Illinois provides merely that the ayes and nays shall be taken. Our statute requires that they shall be called and recorded. It was held in that case that a record of an ordinance, showing a majority of the council present and reciting that an ordinance was "unanimously adopted," was sufficient. It was conceded that the provision of the statute that the yeas and nays should be taken was mandatory, but a majority of the Court thought that the entry was sufficient. The opinion was not unanimous, and Justice Dickey, dissenting, said: "The calling of the ayes and nays is required by statute, that it may affirmatively appear who were present at the passage of the ordinance. The door for the surreptitious passage of ordinances, which I think was closed by the statute, ought not to be opened by judicial construction."

But if that case were directly in point, which it is not, we could not follow it, as our statute has received a different construction by our own Supreme Court, which is binding on us. In the case of *Tracy* v. *The People*, 6 Colo., 152, the Court says, in speaking of the ordinance: "It appears at the trial below that the record of the proceedings of the corporation failed to show that the yeas and nays were called and recorded upon the passage, as required by statute. That the foregoing provisions of the statute require the yeas and nays to be called and recorded upon the passage and adoption of any ordinance is mandatory, does not admit of any doubt under the authori-

ties. 'The power conferred is limited, and can only be exercised in the manner prescribed.'" 1 Dillon Mun. Corp., Sec. 229; *Morrison, Admx.,* v. *City of Lawrence,* 98 Mass., 227; *Spangler* v. *Jacoby,* 14, 298; *Supervisors of Schuyler County* v. *The People,* 25 Ill., 183.

This objection was made for the first time in the Supreme Court. That Court held it valid, although it had not been urged in the County Court, reversed the case, and ordered the Court below to dismiss the complaint. It will be seen that the Tracy case was reversed, not because the yeas and nays had not been called and recorded, but because the record failed to show that this had been done. The reasons for the requirement of the statute are obvious. It has not been complied with in the passage of the ordinance now in question. For that reason, under the authority of the Tracy case, the ordinance is void. Counsel for the respondent admit, as I understand them, that if the judgment is void the petitioner ought to be discharged; but they say the Court had jurisdiction, and, therefore, the judgment is not void; that if the ordinance is void, the judgment is erroneous merely, and that in such case petitioner cannot be released. Jurisdiction is defined in general terms to be the power to hear and determine. We admit that in a general sense he had jurisdiction. He had jurisdiction under our statutes to convict for a great number of offenses. No doubt he had jurisdiction under the city ordinances to convict and commit a person in a great number of cases, for we will not presume that all the ordinances are void. But when we say that the justice has jurisdiction in a certain case, we mean that he has lawful power to hear and determine that particular case. Because a justice has jurisdiction in one case, it does not therefore follow that he has jurisdiction in all cases, or in any other case whatever. The question here is, whether the justice had jurisdiction in this case. We admit that he had jurisdiction in a great many other cases, but because he had jurisdiction to commit on conviction for assault and battery, or on conviction for a violation of a certain ordinance, it does not follow that he has jurisdiction to commit for violation of the ordinance now before the Court. Whether he has jurisdiction to commit for violation of that ordinance,

depends upon the validity of that ordinance, and not upon his jurisdiction in other cases.

If counsel for the respondent be correct, the decision in the *Hirschberg case*, 6 Colo., 145, would have been otherwise. The Supreme Court released the prisoner on a writ of *habeas corpus.* He had been convicted of larceny, and sentenced by the District Court to a term in the penitentiary. That Court had jurisdiction to sentence a defendant to the penitentiary. It had jurisdiction to sentence for murder, arson, larceny and other crimes, but it had no jurisdiction to sentence Hirschberg in that particular case, because the law against which Hirschberg's offense was committed had been repealed before his conviction and there was, therefore, no law under which he could be punished for that offense.

The Court had jurisdiction to try and sentence Hirschberg for other offenses, if any were committed by him, but not for that particular offense. It was claimed in argument that Hirschberg was discharged because there was no law whatever covering larceny at the time of his conviction, and that if there had been any such he would not have been discharged. There never was a point of time when there was not a statute making theft a crime. When the law under which Hirschberg's offense was committed was repealed, it was replaced by a new statute which instantly went into effect. This decision shows clearly that jurisdiction to convict for violation of a valid statute law does not confer jurisdiction to convict under a void law. Respondent's argument, if applied in the Hirschberg case, would be this: We admit that the law under which the defendant was convicted is repealed, and that he cannot be held under it; but the District Court has jurisdiction in many other cases, and in many other cases may sentence a defendant to a term in the penitentiary, therefore the defendant ought not to be discharged.

In the Garvey case, 6 Colo., 559, the defendant was convicted for murder, and the Supreme Court reversed the judgment on the ground that the law of murder, as it existed when the offense was committed, had been repealed, and that defendant could not be convicted of that crime. The indictment was good as an indictment for manslaughter, and the law of manslaughter had not been repealed. The verdict of the jury was,

guilty as charged in the indictment. The indictment charged manslaughter, and the verdict found defendant guilty of that offense. Upon reversal of the judgment by the Supreme Court, and in the absence of express directions in the order of reversal, the Court sentenced the defendant on that verdict for manslaughter. But the Supreme Court released him from imprisonment under the sentence on a *habeas corpus,* holding that the sentence was void, though the Court had jurisdiction over the defendant in that particular case to try him for manslaughter. And the Supreme Court expressly directed the Court below to put the defendant on trial for manslaughter. The Court says in that case: "True, the change made in the law by statute was such that the petitioner could not be lawfully convicted of murder; but there existed no space of time when the crime of murder was not an indictable statutory offense." Here the Court had jurisdiction in cases of manslaughter and of murder. The sentence was for manslaughter, yet the prisoner was released on *habeas corpus* because the sentence was void. Here the ordinance, which is the foundation for these proceedings, is void, and I cannot see how a void ordinance can confer any jurisdiction whatever. A judgment may be void or voidable, but there is no such thing as a voidable ordinance. An ordinance is void or valid. A judgment based on a void ordinance is not merely voidable or erroneous, but void. But it is said in this application that we can consider matter of law only, and that we cannot examine into the evidence upon which the conviction was had, which of course must be conceded. It was said in argument that the ordinance had to be proven; that its adoption had to be proven, and that therefore it was matter of evidence which we have no right to examine into. If this be true, that the ordinance was evidence introduced at the trial, then we ask, Where is the law? There is none whatever. A valid judgment must be based on evidence and the law; for the very definition of judgment is, that it is the conclusion of the law upon the facts. But here, it is claimed, we have a judgment based entirely on ordinance and facts, without any law whatever to support it. The ordinance is the law of the case, and it is none the less so because it had to be proved on trial. The existence of a statute must be proved by the original in the proper office, or by copies

thereof in some form. A statute is nevertheless a law, in every sense of the term, and so of an ordinance. It is conceded that we may examine the validity of a statute, which is taken as authentic when presented in the usual printed form; but it is said we cannot examine into the validity of an ordinance, because its existence has to be proven in a certain other manner prescribed by statute. We cannot assent to this, for an ordinance certainly has not greater validity than a statute. But it is said that if the ordinance of 1878 is void, there is another ordinance of the city, passed in 1876, unrepealed, under which the defendant can be held. This cannot be done. He must be held under the ordinance which he is charged with violating, and under which the judgment says he was convicted. This is clear from the authorities before cited. Besides, the statute requires that the ordinance shall be specified in the complaint. Where that has been done, and where conviction has been had on that complaint for violation of that ordinance, it cannot be said, when that ordinance is found to be void, that there is another ordinance on the same subject, and that the defendant ought not to be discharged, because he could, in all probability, have been convicted under the ordinance which he is not charged with violating. This would violate the spirit, if not the letter of the constitution. That people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures, and no warrant to search any place or seize any person or thing shall issue without describing the place to be searched or the person or thing to be taken, as near as may be, nor without probable cause supported by oath or affirmation reduced to writing. (Section 7, article II.) In this view it is not necessary to consider whether or not the ordinance of 1876 was repealed by the latter ordinance.

There are other points in this case, but we have not time to consider them, and indeed it is unnecessary to do so. After consideration of this case I have come to the conclusion that the process is defective in the substantial forms required by law, and that there is no judgment or conviction under which the petitioner can be legally restrained of his liberty; that the imprisonment of the petitioner is not according to the forms of law, and is in violation of the general spirit of our constitution, and in direct violation of that section which says "that

no person shall be deprived of life, liberty or property without due process of law," for it cannot be said that a person is confined by due process of law when there is no law authorizing his imprisonment.    I here quote the language of Chief Justice Shaw in the case before cited.    That learned Judge, after citing the various provisions of the constitution of his State, Massachusetts, says:  "These are homely and familiar maxims, scarcely requiring citation, and yet the declaration of rights itself (article 18) admonishes us that a frequent recurrence to them is absolutely necessary to preserve the advantages of liberty and maintain a free government, and that the people have a right to require of their law-givers and magistrates an exact and constant observance of them."    1 Gray, 33.

This case has been presented and argued with earnestness and ability on each side, and the diligent research of counsel has greatly lightened my labors.    The case has been conducted in a spirit of candor and fairness that is gratifying to me.    I feel the weight of the great responsibility that is resting on me.    This is an important case, and I could but wish that its burden might have been placed upon others.    But the question has been presented to me, and it is my duty to decide it.    My convictions are clear that the defendant ought to be discharged, and it is so ordered.

*McMorris & Williams*, attorneys for petitioner.

*Bentley, Hooke & Campbell*, attorneys for respondent.

*Replevin—How far bond takes place of property—Judgment—Effect of.*    Possession obtained by proceedings in replevin, under a claim to a special interest therein by virtue of a lien, does not vest in plaintiff a greater title or interest than he claimed in the action of replevin.    Possession obtained by plaintiff in replevin who claims a special ownership and possession as against one claiming possession as general owner, vests in the plaintiff the title he claims, and as against the general owner, the bond takes the place of the property *to an extent not exceeding the interest claimed by plaintiff.*    In an action by such plaintiff, against the general owner for a conversion of the property, it is competent for defendant to show the nature and extent of plaintiff's interest; and in assessing damages, it was error in the Court to charge the jury to return a verdict for the full value of the property.    If he is entitled to recover, it is only to the extent of his special interest in the property.    *Lugenbeal* v. *Lemert*, Sup. Ct. Ohio, Ohio L. J.