### KELLY v. THE PEOPLE OF THE STATE OF COLORADO.

1. WITNESSES—NOTICE—SEPARATION OF.—Where on a trial for murder notice was given before the jury was sworn, that a certain person would be called as a witness for the prosecution, but no showing was made by defendant for further time to prepare for trial on that account; *held*, that objection to the witness testifying was without merit.

The examination of witnesses out of the presence and hearing of each other is sometimes a valuable aid to the discovery of truth and the furtherance of justice; the separation of witnesses for that purpose is a matter resting in the sound judicial discretion of the trial court.

Where the witness was an officer of the court, and his testimony did not relate to the *res gestœ* of the homicide; *held*, that it was not an abuse of discretion to permit him to testify notwithstanding he had been present at the trial.

2. STRIKING OUT TESTIMONY—MOTION TO BE SPECIFIC.—A motion to strike out all the testimony of a witness given on information and belief, without otherwise designating the testimony so given, is not sufficiently specific. Where the court denied such a motion, but admonished the witness not to testify to what had been told him; *held*, that there was no error.

3. DIFFERENT COUNTS—SAME TRANSACTION.—Where the first count of an indictment was for murder, and the second for manslaughter; *held*, that the prosecutor might proceed to trial upon both counts at the same time, and that he could not properly be required to elect upon which count he would rely, so long as it appeared from the evidence that the two counts related to the same transaction.

4. REASONABLE DOUBT—JURY TO SEARCH FOR THE TRUTH.—In the consideration of the evidence produced on a criminal trial the jury should search primarily for the truth, rather than for doubts; but, if in searching for the truth, substantial doubts of the defendant's guilt should arise from the evidence, or from the want of evidence, such doubts should prevail in favor of the accused, unless upon a fair consideration of all the evidence such doubts should disappear, the burden of proof being upon the people to establish by the evidence, beyond reasonable doubt, every material fact necessary to constitute the defendant's guilt.

5. MURDER—WHEN DEGREE LIMITED.—Where the crime of murder was committed before the passage of the Act of April 19, 1889, which made certain changes as to the infliction of the death penalty, but the trial did not occur until after such act had taken effect; *held*, that the trial court did not err in limiting the conviction to murder of the second degree.

6. MURDER—PROVINCE OF COURT AND JURY.—In a trial for murder the court may, under certain circumstances, be justified in submitting to the jury, by an appropriate instruction, the simple question, whether the defendant is guilty of murder or not guilty, without advising the jury, in the same instruction, that they may find the defendant guilty of manslaughter.

Subject to the exception caused by the act of 1889, it is the province of the jury when they find a verdict of guilty in a homicide case, to designate the offense and the degree thereof; and upon this province the court should not trespass; nevertheless, it is the province of the court to instruct the jury what verdict they *ought*, under the law, to render, in case they find a certain state of facts established by the evidence.

*Error to District Court of El Paso County.*

INDICTMENT for murder and manslaughter. In November, 1890, the defendant Kelly was convicted of murder of the second degree for the killing of one James Phillips, and was thereupon sentenced to confinement in the penitentiary for a term of twenty-six years. He now seeks a reversal of the judgment by writ of error.

Messrs. COLBURN & DUDLEY, for plaintiff in error.

Mr. J. H. MAUPIN, attorney general, and Mr. H. B. BABB, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The assignments of error will be noticed as presented by the briefs of counsel.

1. On the trial it was objected in behalf of defendant, that one Leonard Jackson, a witness for the prosecution, should not be allowed to testify on the ground that his name was not given in the list of witnesses endorsed upon the indictment, and because he had not been placed under the rule excluding witnesses from the court-room during the trial.

It appears that notice was given before the jury was sworn that Jackson would be called as a witness; but no application was made by defendant for further time to prepare for trial on that account. If timely application, accompanied by a showing of the supposed necessity for such further time, had been made, it might have been granted. This not having been done, the objection to the witness testifying was without merit. *Wilson* v. *The People*, 3 Colo. 329; *Minnich* v. *The People*, 8 Colo. 445 and cases cited.

The examination of witnesses out of the presence and hearing of each other is sometimes a valuable aid to the discovery of truth and the furtherance of justice. The exclusion of witnesses from the court-room during the trial is a matter resting in the sound judicial discretion of the trial court. Jackson was sheriff of the county. His testimony

did not relate to the *res gestæ* of the homicide. It does not appear that the court abused its discretion in permitting him to testify notwithstanding he had been present during the trial. 1 Thompson on Trials, sec. 275 *et seq.*

2. The entire testimony of the witness Jackson related to an alleged escape by the defendant from the county jail while he was in the custody of the witness as sheriff. Some of the matters thus testified to appeared to be within the personal knowledge of the witness, while other matters were stated upon information and belief. After the cross-examination had proceeded at some length, counsel for defendant moved to strike out all the testimony of the witness given on information and belief, without otherwise designating the testimony so given. Such testimony had been elicited in part by the questions propounded upon cross-examination. The court denied the motion, presumably upon the ground that it was not sufficiently specific. The court, however, admonished the witness not to testify to what had been told him. From the whole examination it appears that the jury were well advised by the court as to what portion of Jackson's testimony was competent and what was incompetent—at least, they were as well advised as they would have been if defendant's motion to strike out had been sustained without specific modification. Under the circumstances, considering the nature and subject-matter of the testimony, it is clear that the jury were not misled, nor the defendant injured, by any improper testimony given by the witness. 1 Thompson on Trials, sec. 719 *et seq.*

3. The first count in the indictment was for murder; the second for manslaughter. As murder includes manslaughter, the second count was unnecessary, though it did not vitiate the indictment. The district attorney was at liberty to proceed to trial upon both counts of the indictment at the same time; and he could not properly be required to elect upon which count he would rely so long as it appeared from the evidence that the two counts related to the same transaction. 1 Mills' Ann. Stats., sec. 1452. In

considering what was said in *Roberts v. The People*, 11 Colo. 215, about compelling the prosecutor to elect, the distinction between different *counts* and different *transactions* must be kept in mind.   See Bishop's Criminal Procedure, chapters 32 and 33, particularly sections 449 and 459; also, *Packer v. The People*, 8 Colo. 361.

4. In a lengthy instruction explaining the term, *reasonable doubt*, the court indicated that the jury " must not search for a doubt."   The instruction was excepted to on the trial; but it does not appear that the objectionable language was then pointed out.   It is now urged that the language above quoted was calculated to lead the jury to think that " they were not to make full and searching inquiry into the evidence to ascertain whether it was so insufficient that upon a fair consideration of the same a reasonable doubt might be based thereupon."

If the language objected to stood alone, it might be misleading; though, strictly speaking, the jury, in their consideration of the evidence, should search primarily for the truth rather than for doubts.   If in searching for the truth, substantial doubts of the defendant's guilt should arise from the evidence, or from the want of evidence, such doubts should prevail in favor of the accused, unless upon a fair consideration of all the evidence such doubts should disappear.

But the language objected to does not stand alone.   In immediate connection therewith, it appears that the jury were, also, plainly charged to the effect, that the burden of proof was upon the people to establish by the evidence, beyond all reasonable doubt, every material fact necessary to constitute the defendant's guilt; and, also, that a reasonable doubt must be such a doubt as would naturally arise in the mind of a reasonable man upon a review of *all the evidence in the case;* that it means a serious, substantial, well-founded doubt, and not a mere possibility of a doubt; that it is such a doubt as in the important transactions of life would cause a reasonable and prudent man to hesitate and pause; and

that when the jury can say, after carefully and impartially considering *all the evidence in the case*, that they have an abiding conviction of the truth of the charge, then they are in law satisfied beyond a reasonable doubt.

The charge certainly could not have led the jury to believe that they were not to give the evidence a thorough consideration for the purpose of determining whether or not the same would warrant a conviction. It indicates plainly, as it should, that the jury should carefully and impartially consider and search the evidence, not for a doubt, but for the purpose of ascertaining the truth in respect to the charge against the defendant.

It is clear that the entire charge upon the subject of reasonable doubt—that which precedes and also that which follows the words complained of in the same instruction, as well as that which occurs in the instruction immediately preceding—so modifies and explains the words complained of that the jury could not have been misled thereby. It is a familiar rule, that in determining whether or not there is, error in a part of the charge to the jury, the whole charge bearing upon the particular subject must be considered.

5. The crime of which the defendant was accused was committed before the passage of the act of April 19, 1889, which made some changes as to the time, place and other incidents pertaining to the infliction of the death penalty; but the trial did not occur until after such act had taken effect. In *Tyson's Case*, 13 Colo. 482, this court held that the changes in the statute were not sufficient to render the act *ex post facto*. But in the *Medley and Savage Cases*, 134 U. S. 160, 176, the supreme court of the United States (Justices Brewer and Bradley dissenting) took the opposite view; and so Medley and Savage, though duly convicted of murder of the first degree in this state, were set at liberty. In view of these decisions of the highest judicial tribunal of our country, the district court of El Paso county acted wisely, in charging the jury not to convict Kelly of a crime so heinous that he would escape punishment altogether. The life

of a criminal statute is its sanction, or penalty. The decisions in the *Medley and Savage Cases* virtually declared that the crime of murder in this state could not rise to the grade of first degree, if committed prior to the act of 1889, *supra*. The district court, therefore, did not err in limiting the conviction to murder of the second degree. *Garvey v. The People*, 6 Colo. 559; *Packer v. The People*, *supra*.

6. It is further urged that certain instructions given by the court were calculated to lead the jury to convict the defendant of murder of the second degree, or else acquit him altogether. Instruction number 4 concludes as follows: "The court, however, as matter of law, instructs the jury that you cannot, in the present state of our law, convict defendant of murder of the first degree, so that the attention of the jury must be confined to murder of the second degree." The immediate connection in which this language was used clearly shows that it was employed to prevent the jury from convicting the defendant of murder of the first degree, as above explained, and not to prevent them from reducing the verdict to manslaughter, in case they were unwilling to render a verdict of acquittal.

It was clearly established by the evidence that the deceased, James Phillips, came to his death from wounds inflicted by a knife or other sharp instrument. One witness testified to seeing Kelly pursue Phillips, threatening to kill him; that Kelly struck Phillips repeatedly with a knife while Phillips was fleeing and crying for mercy, saying, "For God's sake, spare my life," "Don't kill me," and the like; that the knife had a long blade; that the affray occurred just as the two men rushed out of a drinking saloon on Sunday evening, and that the strokes were inflicted with the knife on those parts of Phillips' body where the fatal wounds were found by the attending surgeon the next morning. This testimony was corroborated in several particulars by other witnesses.

The defendant by his testimony denied that he stabbed Phillips, denied that he struck him with a knife, denied that

he struck him at all, or that he had had any difficulty with him. There was no substantial corroboration of the defendant's testimony.

Upon such testimony there was no question of justification or provocation to be submitted to the jury. It was not contended in behalf of defendant that he struck Phillips in self defense, or that he struck him in the heat of passion. On the contrary, the defendant testified that he did not strike him at all.

From the testimony introduced upon the trial, the principal question to be determined was : How, or by whom, were the fatal wounds inflicted? Upon the evidence the court was fully justified in submitting to the jury, by appropriate instruction, the simple question whether the defendant was guilty of murder of the second degree, or not guilty; and was not bound, at least in the same instruction, to advise the jury that they might find the defendant guilty of manslaughter. There was really no evidence to warrant the jury in convicting of manslaughter. The *corpus delicti* being proved as alleged, and there being no controversy as to the time, venue or other formal matter alleged in the indictment, it was the duty of the jury to convict of murder, if the evidence thus given satisfied them of defendant's guilt beyond a reasonable doubt; if the evidence did not so satisfy them, it was their duty to acquit the defendant on the ground that he did not inflict the wounds.

Subject to the exception caused by the act of 1889, as above explained, it was undoubtedly the province of the jury to designate by their verdict the offense and the degree thereof, if they found the defendant guilty; and upon this province the court did not trespass. But it was unquestionably the province of the court to instruct the jury what verdict they ought, under the law, to render in case they should find a certain state of facts established by the evidence ; and this was all the court assumed to do. Thompson on Trials, sec. 2184. In other parts of the charge, the jury were instructed that the defendant was charged with manslaughter

as well as murder; the distinction between those offenses was clearly pointed out; and the jury were charged to consider the evidence and apply the law to the facts, the court expressly declaring that it indicated no belief as to the question whether the defendant was or was not guilty of any particular grade of crime, or as to whether he was or was not guilty at all.

There was no substantial error in the charge of the court as given; and no further instructions were prayed in behalf of defendant. It must, therefore, be supposed that the able and vigilant counsel of defendant considered, that the instructions given were as full and complete in every substantial respect as the evidence would justify. It is not claimed, upon this review, that the verdict was against the evidence. The defendant appears to have had a fair and impartial trial. The judgment must be affirmed.

*Affirmed.*