· [No. 4057.]

SHORT ET AL. v. THE PEOPLE.

1. INFORMATIONS AND INDICTMENTS—CONSOLIDATION—PRACTICE.
It was not error to consolidate two informations upon the statement of the district attorney that the several counts in the two informations referred to the same transaction, and where the evidence showed that such was the case, although it did not appear upon the face of the informations that they referred to the same transaction.

2. PRACTICE IN CRIMINAL CASES—EVIDENCE—ORDER OF PROOF.

The order in which testimony shall be admitted rests largely in the discretion of the trial court, but as a general rule evidence tending to establish the *corpus delicti* should be first in the order of proof before extrajudicial confessions are received.

3. SAME—UNCORROBORATED CONFESSIONS INSUFFICIENT.

Extra judicial confessions, uncorroborated by other evidence tending to establish the *corpus delicti* and the connection of defendant with it, is insufficient to sustain a conviction.

4. CRIMINAL LAW—BURGLARY—CONSPIRACY.

Burglary and conspiracy to commit burglary, are distinct and separate offenses, and one may be made out without reference to the other, and separate punishment may be inflicted upon conviction of each offense.

5. CONSPIRACY—EVIDENCE.

The unlawful agreement is the gist of the crime of conspiracy, but evidence of the consummation of the conspiracy is always admissible as a circumstance tending to prove, and as throwing light upon it.

6. APPELLATE PRACTICE — BILL OF EXCEPTIONS — CERTIFICATE OF TRIAL JUDGE—EVIDENCE.

Where the certificate of the trial judge to a bill of exceptions certified that the foregoing was all the evidence introduced in the trial relating in any manner to the admissibility of the confessions testified to by witnesses, it will be construed as certifying only that the bill contains all the evidence that relates to the question as to whether or not the confessions were given under such conditions as the rules of evidence require to make them admissible, and not that it contains all the evidence corroborative of such confessions.

7. APPELLATE PRACTICE —PRESUMPTIONS — CONFESSIONS—CORROBORATION.

It is a presumption that the action of the trial court was right unless the record affirmatively shows to the contrary, and upon review of a conviction for crime where the bill of exceptions does not contain all the evidence, it will be presumed that there was evidence corroborative of and independent of the extrajudicial confession of defendant, else the trial court would not have submitted it to the jury.

8. EVIDENCE—CONFESSION—ADMISSIBILITY—COCONSPIRATOR.

A request on behalf of one coconspirator to instruct the jury to disregard the whole of admissions, declarations and confessions of another conspirator as against the first, was properly refused where part of the admissions were made in the presence of the defendant making the request.

9. SAME.

The admission in evidence on the trial of two coconspirators of the confession of one is not reversible error where the confession after it

was made was repeated in substance in the presence of the other, and its truth virtually admitted.

10. APPELLATE PRACTICE—OBJECTIONS TO INSTRUCTIONS—EVIDENCE.

On review objections to instructions cannot be considered where the record does not contain all the evidence.

11. INSTRUCTIONS—HARMLESS ERROR.

An instruction that a conspiracy is an agreement between two or more parties to do a lawful act in an unlawful manner is under our statute erroneous in the abstract, but where the object of the conspiracy as charged was to commit burglary, the error was harmless.

12. PRACTICE IN CRIMINAL CASES—INFORMATIONS—PRESUMPTION—SEPARATE OFFENSES.

Where an information contains two counts, unless it appears upon its face that it charges two separate offenses it will be presumed that it charges but one offense in two different ways.

13. PRACTICE IN CRIMINAL CASES—INFORMATION—SEPARATE COUNTS—VERDICT.

Where an information charges a single offense in separate counts, the jury may return the general verdict of guilty and the court pass sentence for a conviction of one offense.

14. APPELLATE PRACTICE—PRESUMPTIONS.

Presumptions of the correctness of the rulings of the trial court and of the regularity of the proceedings are indulged by a court of review, and the burden of showing prejudicial error rests upon him who asserts it, and it must be made to appear by the record of the case as presented in the appellate court before a reversal is had.

*Error to the District Court of Arapahoe County.*

THE defendants were found guilty of conspiracy to commit burglary and were sentenced to the penitentiary. The record discloses the following:

In the district court of Arapahoe county two informations were filed against John Short, William Brown and William Gill, which are designated respectively as informations No. 1 and No. 2. There were two counts in each. In the first count of No. 1 the defendants were charged with conspiring to burglarize without force the dwelling house of John W. Nesmith with intent to steal the personal goods of Hannah Anderson; and the second count was the same as the first, except that the intent was said to be to steal personal goods found in the house, without specifying their owner. In No. 2 the two

counts were the same as in No. 1, except that it was alleged that the burglary was to be committed with force.

Before the trial the court ordered the consolidation of the two informations for trial in one action, upon the statement by the district attorney that all the facts arose out of the same transaction, to which the defendants objected because the informations contained two separate and distinct offenses, and were not the subject of joinder.

To a full understanding of the points decided, it is necessary to summarize the evidence contained in the bill of exceptions. After establishing the venue, the ownership of the dwelling house, and elements of that character, Hannah Anderson, a witness for the prosecution, in substance testified that she and William Gill were the servants of Mr. Nesmith and were living in his dwelling house in the city of Denver on the 21st of June, 1898. About three o'clock on a Thursday afternoon the witness left the house, and before doing so closed the door of her room, leaving in it $90.00 in money, a check for $113, and a gold watch, and saw them just before her departure. She returned about 5 o'clock in the afternoon, and about 10 o'clock in the evening discovered that her money, check and watch were missing.

Two days before this the witness had a conversation with one of the defendants (William Gill), and being then desirous of going to the city park, asked said defendant if he would not stay at home, because it was a rule of their employer not to permit all of the servants to leave at the same time, but for at least one of them to be there; and in reply to this question the defendant said that it was not necessary for both of them to stay at home, because there was nothing in the house to steal, to which the witness replied that she had a little money in her room, and was afraid to leave the house alone. She saw the defendant Short about the premises first about two weeks before, and the last time the evening after, the theft. On the last occasion Short came into the kitchen with his codefendant Gill, and sat down there while Gill was eating supper, and after the meal was finished the two went out together.

The prosecution then introduced witnesses to testify to extrajudicial confessions made by the defendant Gill after the object of the conspiracy had been accomplished. The defendants had separate counsel, and there were objections by both to this offer, because, after the consummation of a conspiracy, declarations of one party to it cannot be used against the others, and on the ground that no evidence, up to that time, had been introduced to establish the *corpus delicti*, meaning the offense of conspiracy; and by Short's attorney on the ground that declarations of Gill in the absence of Short were not admissible against the latter. The court admitted the testimony, which in substance was that defendant Short came to him (Gill) about a week before the house was burglarized, and asked Gill if there was any money in his employer's house, to which Gill replied that the servant girl, Hannah Anderson, had about $300 in her room. Short then said to Gill that he was a married man, and did not care to be caught in trouble, but that he could get a man to commit a burglary if Gill would arrange to let this third person into the house, whom Short would bring there for that purpose.

On the following day Short came to Gill with William Brown, telling Gill that Brown was the man whom he had procured to commit the burglary. The three then went up into the loft of the barn situate on the same premises, and made the arrangements to commit the burglary, and it was agreed between them that Gill should arrange the front door so that Brown could gain entrance to the house, and the proceeds of the expedition were to be divided equally between them.

In pursuance of the conspiracy, Gill arranged with Brown to enter the premises, told him where Hannah Anderson kept her money and jewelry, and fixed the door so he could enter from the front part of the house. Brown entered as arranged, proceeded upstairs to the designated room, and took therefrom $90.00 in money, a check for $113, and, on a second trip, a gold watch and chain. The three men then went to the loft of the barn, the money was counted out on

Gill's knee, but Gill, becoming frightened, refused to take any of the money, and Short and Brown left with it.

The prosecution introduced witnesses who further testified that on the day following the alleged confession of Gill, they had a further conversation with him, and that he made a further, or, rather, repeated to them the same, confession in the presence of his codefendant Short; that after recalling to Gill, in the presence of both defendants, the fact that he had made a confession on the previous day, they told him that he could make whatever statement he desired in the presence of Short, giving the latter an opportunity to defend himself, or admit, or deny, any part of it.

Gill then, in the presence of Short, according to the witnesses for the prosecution, made substantially the same statement as hereinbefore recited, and while Gill was talking, Short thus interrupted him, when the following occurred: "Didn't you tell me that the girl up there had $300 in her trunk?" to which Gill replied, "Yes;" and Short again said, "Didn't I tell you that I didn't want to be seen about the premises or I didn't want to be caught in a burglary of that kind, or in a burglary? That I have a family here and that it was liable to make me trouble? Didn't I tell you that I would furnish a man to commit the burglary?" to which Gill replied, "Yes." And again Short said, "And didn't I furnish him?" to which Gill replied, "Yes," and Short said, "Didn't he commit the burglary?" and Gill said, "Yes," and Short said in conclusion, "That is all I had to do with it."

The jury found defendant John Short guilty under information No. 1, which verdict was afterwards set aside, and under information No. 2 both of the defendants were found guilty. Such additional facts as are necessary will be found in their appropriate place in the opinion.

Mr. JOHN A. RUSH, for plaintiffs in error.

Mr. D. M. CAMPBELL, attorney general, Mr. CALVIN E. REED and Mr. DAN B. CAREY, assistant attorney generals, for the people.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The assignments of error are argued under four heads: First, error in consolidation of the cases for trial; second, error in admitting evidence; third, error in the giving and refusing of instructions; fourth, error in the form of verdicts as rendered.

1. Section 1452, Mills' Ann. Stats. (Gen. Stats. 1883, sec. 945) permits the joinder in one indictment or information of several charges against any persons for the same act or transaction, which may be properly joined, instead of in separate indictments or informations, and when two or more indictments or informations have been found, the court may order them consolidated for trial. This statute has been under consideration by this court in *Chesnut v. The People*, 21 Colo. 512; *Packer v. The People*, 26 Colo. 306; and by the court of appeals in *Cummins v. The People*, 4 Colo. App. 71; and *White v. The People*, 8 Colo. App. 289. The statement was made by the district attorney when the consolidation was ordered that the several counts in the two informations referred to the same transaction, and though that fact did not appear upon their face, it sufficiently appears from what testimony there is in this record that such was the case, and that the different counts were but different methods of charging the same offense. That being so, under the authorities already cited, the consolidation was proper.

2. The order in which testimony shall be admitted rests largely in the sound discretion of the trial court. Possibly cases may be found wherein the declaration is made that extrajudicial confessions of a prisoner cannot be admitted until after the *corpus delicti* has been established. We cannot subscribe to that doctrine thus broadly stated, though it is doubtless true, as a general rule, that evidence tending to establish the *corpus delicti* should be first in the order of proof. But extrajudicial confessions, uncorroborated by other evidence tending to establish the *corpus delicti* and the connec-

tion of the defendant with it, are not sufficient to sustain a conviction. It is upon the latter ground that the defendants mainly rely. They strenuously argue that, aside from the alleged confessions, there is no testimony whatever showing, or tending to show, the existence of the fact of a conspiracy (which is the crime charged).

The conspiracy to commit a burglary, and burglary, are distinct and separate offenses, and the one may be made out without reference to the other, and separate punishment may be inflicted upon conviction of each offense. Evidence of the consummation of the conspiracy, however, is always proper in a trial for the conspiracy, not necessarily for the purpose of establishing the conspiracy, but as a circumstance tending to prove, and as throwing light upon it. The unlawful agreement is the gist of the crime of conspiracy; and, in the nature of things, direct and positive evidence is seldom accessible. It must be largely circumstantial. We cannot say that in this record there is no corroboration whatever of the confessions of defendant, and no independent evidence of the existence of a conspiracy. Possibly the mere fact that the witness Hannah Anderson testified to the presence of the defendants at the house in question at or about the time of the commission of the burglary is not strong corroborative testimony, nor that any one fact or circumstance testified to by her tends strongly to prove the conspiracy; but her entire testimony about the two defendants Short and Gill, and the perpetration of the burglary at least tends to show, and is of some weight in establishing, the conspiracy to commit that crime, concerning the existence of which the confession of each defendant relates.

There is another reason why plaintiffs in error cannot be heard upon this assignment. All the evidence has not been brought up. The certificate of the trial judge is as follows:

" This is to certify that the foregoing is all the evidence introduced in the trial of these cases relating in any manner to the admissibility of the confessions testified to by the witnesses for the people; that the defense was an absolute denial

of the commission of the crime charged and a denial of ever having made said confessions."

The construction put upon this certificate by counsel for plaintiffs in error is that this record contains all the evidence that in any way tends to corroborate the confessions, and all that in any manner bears upon the existence of the conspiracy. Such, however, is not our interpretation. The language is plain and unambiguous, and in terms recites that all of the evidence is in the bill which relates in any manner to the *admissibility* of the confessions, that is, as to whether or not they were made voluntarily, and with or without duress, or under such conditions as the rules of evidence require when an offer of proof of a defendant's confession is made. This does not mean that there was not evidence, aside from the admitted confessions, in that portion not brought up, which is corroborative in character and tends to establish the existence of a conspiracy. If there was no evidence of the latter kind, it would have been easy for the judge to say so, and we cannot presume that he intended to certify that there was no other and corroborative evidence, in view of the fact that he submitted the case to the jury on the assumption that there was independent proof of the *corpus delicti*.

It is a presumption that the action of the trial court was right unless the record affirmatively shows to the contrary; and as it was the duty of the trial court to withdraw the case from the jury and direct a verdict for the defendants unless there was some independent evidence tending to establish the conspiracy in confirmation of the confessions, we must presume that evidence of this kind was before the court unless the record shows there was not; and if, as plaintiffs in error claim, the record as certified up does not show it, the presumption is that the evidence brought out upon the examination of the defendants, none of which has been included in the bill, contained it.

The additional point is made that the confession of Gill, not made in the presence of his codefendant Short, was admissible only as against Gill, and not against Short, and the

jury should have been so instructed. When this testimony was offered and the objection made, the court, in the presence of the jury, remarked that, unless Short in some way was connected with it, the jury would be instructed to disregard the testimony, so far as it pertained to him. Before argument counsel for defendant Short did ask the court to instruct the jury to disregard the admissions, declarations and confessions of Gill as against defendant Short. But this was manifestly an improper request, for certainly some of Gill's declarations were made in Short's presence, and the court, for that reason alone, might refuse the request.

Furthermore, the record is that, on the day following this confession made in Short's absence, Gill repeated the same in substance in Short's presence, and the latter did not deny a word of it, but virtually admitted the truth of all that Gill said, and apparently sought to escape the consequences of the admission by protesting (which seems to be true) that he himself, though joining in the conspiracy, did not in person enter the house and take the money, but procured a third person—William Brown—to do so. In this view, therefore, we think there was no prejudicial error in refusing the request.

3. We cannot consider the objections to the instructions for all the evidence in the case is not before us, and we.cannot, for that reason, enter upon a fruitless investigation of propositions of law whose pertinency and accuracy can be determined only in the light of all the evidence bearing upon them.

It is insisted, however, that one of the instructions, wherein the court said that a conspiracy is an agreement between two or more persons to do a lawful act in an unlawful manner is wrong under any supposable state of evidence. In *Connor v. The People*, 18 Colo. 373, *Miller v. The People*, 22 Colo. 530, and *Lipschitz v. The People*, 25 Colo. 261, it has been held that the object of the conspiracy must itself be an unlawful act if committed, and the doing of a lawful act in an unlawful way is not within the purview of our conspiracy

statute.   As an abstract proposition, therefore, the instruc-
tion of the court in this case to the contrary is wrong.   But
in view of the fact that the object of the conspiracy charged
in each count of these two informations was burglary, which
in itself is a crime under our statute, no possible harm could
result to the defendants from the erroneous instruction com-
plained of.   It was a clear case of harmless error, though the
instruction should not have been given.

4. With the verdict in information No. 1 we have noth-
ing to do, for the trial court set it aside.   The language of
the verdict under the other information is : " We, the jury,
find the defendants John Short and William Gill guilty of
conspiracy to commit burglary as charged in the ——— count
of the information."   The objection is that it is uncertain,
obscure, ambiguous, and that it is impossible to tell there-
from of which offense the defendants were convicted, and
therefore the court could not intelligently determine what
penalty to inflict.

The language is that the defendants were guilty of a con-
spiracy to commit burglary, and that crime is charged in two
separate counts, the only difference being that the first charges
the intent with which the burglary was to be committed
was to steal the personal property of a designated person,
while in the other it was to steal personal goods without
reference to the owner.   There is nothing on the face of the
information to enable us to determine whether the two counts
charged one offense in two different ways, or two separate
offenses, and the only way definitely to determine this is to
resort to the bill of exceptions.   And unless it appears, either
from the face of the information, or from the bill, that two
separate offenses are charged in the same information, the
presumption is that but one offense is charged.   1 Bishop,
Crim. Pro. § 1325–1334 ; 21 Am. & Eng. Ency. of Law, 1078.
And where the information is for one offense only, charged
in separate counts, the jury may return the general verdict,
guilty or not guilty ; and the court may, as was done in this
case, pass sentence for a conviction of one offense.

From the record before us, as already suggested, it would seem that only one offense was intended to be charged, and that the defendants were tried for only one offense, and the judge's charge makes it quite obvious that only one offense was submitted to the jury, and defendants were sentenced as for a conviction of one crime. If the contrary is true, and the evidence not certified up would require us to reach a different conclusion, it was the duty of the plaintiffs in error to furnish us with the same.

Upon the whole case it is proper to say that the guilt of these defendants seems clear, and while this furnishes no reason for disregarding those sound and stable principles of the criminal law which should be applied to every case, still we should not be astute to find reasons for reversal where guilt so manifestly appears and where a fair trial is had. It may be true that there is no direct testimony to the existence of a conspiracy, and that the corroborating proof, which consists altogether of circumstances, may not be so clear and convincing as is desirable; but, though seriously conflicting, it was weighty enough to satisfy the jury, and was of the character and strength to satisfy the trial judge, not only at the time he permitted the testimony of the confessions to remain before the jury, but also upon the motion for a new trial after all of the testimony had been laid before him.

In criminal as in civil trials presumptions of the correctness of the rulings of the trial court and of the regularity of the proceedings below, are indulged by a court of review, and the burden of showing prejudicial error rests upon him who asserts it; and it should be made to appear from the record in the case as presented in the appellate tribunal before a reversal is had.

The judgment should be affirmed, and it is so ordered.

*Affirmed.*