No. 12,133.

Phenneger v. The People.

Decided March 11, 1929. Rehearing denied April 29, 1929.

Mr. LEWIS deR. MOWRY, Mr. ROBERT D. CHARLTON, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. ROBERT E. WINBOURN, Attorney General, Mr. WILLIAM

W. Gaunt, Assistant, Mr. Sidney P. Godsman, Assistant, for the people.

*Department One.*

Mr. Justice Alter delivered the opinion of the court.

F. G. Phenneger, plaintiff in error, hereinafter referred to as defendant, was tried and convicted of the crime of embezzlement, and sentenced to the penitentiary for a term of years. To review that judgment he prosecutes this writ, and relies upon 93 assignments, which may be classified as follows: (1) Refusal of court to segregate witnesses; (2) prejudicial remarks of court, made in the presence of the jury; (3) admission of improper and immaterial evidence; (4) admission of improper rebuttal evidence; (5) refusal to direct a verdict of not guilty; (6) undue restriction of cross-examination; (7) improper evidence as to values; (8) improper evidence as to reputation; (9) giving, and refusal to give, certain instructions.

The information in this case, filed by the district attorney February 25, 1928, charges: "That F. G. Phenneger on, to-wit, the first day of March in the year of our Lord nineteen hundred and twenty-seven at the City and County of Denver aforesaid, in the State of Colorado, was the agent, to-wit: President of American Tax Company, a corporation, and that by virtue of his employment as such agent the said F. G. Phenneger did then and there have in his possession and under his care two thousand five hundred dollars in money of the value of two thousand five hundred dollars of the moneys, goods and personal property of the said American Tax Company, a corporation, and that while so in possession thereof, the said F. G. Phenneger without the consent of said American Tax Company, a corporation, did then and there feloniously embezzle and fraudulently convert to his own use the said two thousand five hundred dollars

in money and so the said F. G. Phenneger then and there, in manner and form aforesaid, the said two thousand five hundred dollars in money of the value of two thousand five hundred dollars of the moneys, goods and personal property of the said American Tax Company, a corporation feloniously did steal, take and carry away, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.''

The evidence in this case discloses that the defendant organized the American Tax Company, a Colorado corporation, in 1925, and immediately upon its organization became, and until March, 1928, was, its president and general manager.

The American Tax Company was incorporated for $1,000,000, and its stock consisted of 1,000,000 shares of the par value of one dollar.

At the first meeting of its board of directors, the defendant proposed to transfer to the company certain property in exchange for 50,000 shares of the capital stock of the company. This proposal was accepted and the transfer made.

It was necessary to arrange for financial assistance in the organization and promotion of the company, and the selling of its stock. This the defendant arranged to provide, and as compensation therefor, he was to receive five per cent of the receipts from stock sales. Later on in the history of the company, in addition to the commission on sales, the defendant received a salary from the company.

Some time after the organization of the company, the defendant began to draw money in excess of his commission and salary. The secretary of the company, prior to March 31, 1927, called the defendant's attention to the fact that he had overdrawn his account about $30,000. The defendant attempted to balance this $30,000 overdraft by returning to the treasury 30,000 shares of his stock in the company.

On March 1, 1927, the defendant caused the company's check for $2,500 to be drawn to his order. After the check was signed by the defendant as president and countersigned by the secretary, the defendant cashed it. This is the basis of the charge in this criminal case.

The defendant testified that his practice of drawing money, in excess of that actually due him for salary and commissions, was with the knowledge and consent of the board of directors of the company, and was done by him in perfect good faith, and without any attempt at concealment. All of which is emphatically denied by the members of the board.

We should also state that the account of this defendant, on the company's books, appears to be in perfect balance, but this balance was accomplished by the return of stock, as mentioned above.

We shall now proceed to consider the assignments of error in the order mentioned above.

1. At the commencement of the trial, before the opening statements had been made, and before any witnesses had been sworn, the following occurred:

"Mr. Mowry: At this time I would like to move to have the witnesses segregated.

"The Court: Unless there is some particular reason for it, Mr. Mowry, the motion will be denied.

"Mr. Mowry: I have a particular reason, or I wouldn't make the motion.

"The Court: The motion will be denied.

"Mr. Mowry: Does your Honor want to hear my reasons?

"The Court: You may state them, certainly.

"Thereupon and out of the hearing of the jury Mr. Mowry made the following statement 'The reason assigned for my motion is that part of the defendant's defense is based on the fact that there is a conspiracy between Maudru and Doherty, who is the complaining witness, and other directors, to lay the blame for the condition of the company upon the defendant.'

"The Court: The court will rule that the witnesses in this case will not be separated or sequestered, for the reason that it does not think there is any necessity for it.

"Mr. Mowry: We save an exception."

In *Short .v. People,* 27 Colo. 175, 186, 60 Pac. 350, Mr. Chief Justice Campbell, delivering the opinion of the court, said: "In criminal as in civil trials presumptions of the correctness of the rulings of the trial court and of the regularity of the proceedings below, are indulged by a court of review, and the burden of showing prejudicial error rests upon him who asserts it; * * * "

In *Kelly v. People,* 17 Colo. 130, 132, 29 Pac. 805, Mr. Justice Elliott, speaking for this court, said: "The examination of witnesses out of the presence and hearing of each other is sometimes a valuable aid to the discovery of truth and the furtherance of justice. The exclusion of witnesses from the court-room during the trial is a matter resting in the sound judicial discretion of the trial court."

In *Rogers v. People,* 76 Colo. 181, 183, 230 Pac. 391, Mr. Justice Allen, speaking for the court, said: "The contention most urged is that the court erred in overruling defendant's motion to exclude witnesses from the court room. * * * However, in this state this court has held that this is a matter resting in the sound discretion of the court. *Kelly v. People,* 17 Colo. 130, 29 Pac. 805. In the instant case the court could have denied the motion in the exercise of its discretion."

Counsel for defendant say in their brief, "There was absolutely no reason for the court not to exclude the witnesses," and " * * * all the directors of the company who testified at the trial and were on the board at the time of the transaction here in question, testified alike, * * * ." It is not sufficient to say that there was no reason why the court should not have excluded the witnesses, but it was all important to show some good and valid reason why the witnesses should be excluded. We are not willing to assume that because men testify sub-

stantially alike, they have been influenced by the testimony of other witnesses, or perhaps, are perjuring themselves.

The defendant has wholly failed to show that he was in any manner injured or prejudiced by the court's ruling upon his motion, nor has he shown any abuse of discretion.

2. The defendant complains of certain remarks made by the court during the progress of the trial, and in the presence of the jury. The witness Heider, who was secretary-treasurer of the company while the defendant was president, was being examined by the district attorney with reference to the defendant's account with the company, especially concerning certain debits and credits appearing therein. The particular remarks, of which defendant now complains, are as follows:

"Mr. Cline: Q. Then there was an agreement between you and Mr. Phenneger? A. There was no private agreement between the two of us.

"Mr. Mowry: I object.

"The Court: I assume you are interested in having the facts developed. He may answer the question.

"Mr. Mowry: I save an exception."

We direct attention to the lack of proper objection, but will assume that the record is such as to require us to review the error assigned by reason of the remarks of the trial court.

"During the trial, the judge should refrain from making any unnecessary comments which might tend to a result prejudicial to a litigant, and when calculated to influence the minds of the jury, such remarks constitute ground for reversal. Nevertheless, not every unguarded remark of a trial judge, in the presence of the jury is ground for reversal. To be so, it must be shown to be prejudicial to the rights of the party complaining, or at least appear probable that prejudice resulted. It is not enough that there is a possibility that the remarks were prejudicial. * * * " 38 Cyc. 1316, par. M.

"Undoubtedly, any remarks of the presiding judge made in the presence of the jury, which have a tendency to prejudice their minds against the unsuccessful party, will afford ground for a reversal of the judgment. * * * " Thompson on Trials, Vol. 1, p. 237, § 218.

"The judge should, during the course of the trial, refrain from remarks that are calculated in any way to influence the minds of the jury. * * * " 26 R. C. L. 1026, § 27.

It will not be urged that the court erred in assuming that defendant's counsel were interested in "having the facts developed," for that is precisely the duty that counsel owe the courts, and is in strict accord with their oaths as attorneys. It would seem equally obvious that no possible harm could come to the defendant in apprising the jury of the duty which counsel owe the courts and their clients. It will not be contended, we believe, that the remarks of the court could possibly be construed as an expression as to the guilt or innocence of the defendant, and, if they are so construed, we decline to adopt that construction. In fact, we may say that the remarks are susceptible of a construction favorable rather than unfavorable to the defendant, because by them, the court directed the attention of the jury to the fact that counsel for the defendant did wish to have only the facts developed at the trial.

Our attention is directed to *Laycock v. People,* 66 Colo. 441, 182 Pac. 880, wherein this court reversed a judgment of the district court solely by reason of remarks made by the court in the presence of the jury during the progress of the trial. The remarks of the judge in the Laycock case, supra, were clearly susceptible of a construction unfavorable to the defendant, for from them, the jury might reasonably conclude that the burden was upon the defendant to explain, rather than upon the people to prove him guilty beyond a reasonable doubt. If this inference was the natural result of the trial court's remarks, they would constitute reversible error. This

court, in the Laycock case, determined that the remarks of the trial court, made during the course of the trial, were prejudicial, and therefore, reversed the judgment. The natural import of the remarks in the Laycock case, supra, and the instant case, is so dissimilar as to make the one useless as a guide in disposing of the other. We hold that the defendant has failed to show that he was prejudiced by the remarks of the court, and that there is nothing inherently wrong in the language used by the court, and we can not and will not presume that prejudice resulted.

3. There was evidence offered, and received, which related to the financial condition of the company and to the value of its property prior, and subsequent, to March 1, 1927, the date of the offense charged. This evidence is characterized by the defendant as "improper, immaterial and wholly foreign." An examination of the voluminous record in this case justifies the assertion that this evidence first became interjected into the case by the defendant in his cross-examination of witnesses.

During the cross-examination of Mr. Heider, a people's witness, the defendant, over the objection of the people, was allowed to introduce in evidence the initial contract between the company and the defendant. This contract provided for the transfer of property, by the defendant to the company, in exchange for its stock, and in it certain values were placed upon the property thus to be transferred. Subsequently, in the cross-examination of witness Baldwin, who was an auditor and accountant employed by the defendant to report upon the financial condition of the company, the defendant went into the question of values of property and the company's financial condition. He persistently pursued the same course during the cross-examination of people's witnesses, Calame and Doherty, both of whom had been, or were, directors of the company during the period in which the defendant was its president and general manager.

After the people had rested their case, and the defendant was on the stand under cross-examination, and was being questioned with reference to the value of certain property which he had transferred to the company at the time of its organization, the following occurred:

"Q. How long had you owned that farm that you traded for these tax certificates?

"Mr. Mowry: We object to this, going back that far. It seems to me, your Honor, we are going far afield. I have no objection to going into the value of these things, if he wants to, but I don't think it is material, inquiring where did you get the farm, and how did you get the farm, and where did you get what you paid for the farm, and those things.

"Mr. Cline: The purpose is to show that the stuff he turned over to The American Tax Company, was practically valueless, and the land that he paid for the stuff was valueless. We want to show he was not acting in good faith when he claims he turned over fifty thousand dollars' worth of stuff to the company for fifty thousand shares.

"The Court: He may answer the question.

"Mr. Mowry: I save an exception."

An examination of the bill of exceptions in this case shows that throughout the long examination and cross-examination of the witness Baldwin, who testified in detail as to the condition of the company, the defendant interposed no proper objection. The same condition is found in examining the evidence of the witnesses Calame and Doherty.

The defendant, having interjected this evidence into the case, is in no position to complain. The citation of authorities is unnecessary.

4. The defendant complains that prejudicial error was committed in permitting the people to "split their proof" by calling R. D. Williamson, a witness for the people in rebuttal, to testify to a transaction, between witness and the defendant, with reference to a thousand

dollar check of the tax company. This check was signed by the defendant as president, made payable to the witness, dated April 1, 1927, one month after the date of the offense charged. The defendant, when called as a witness in his own behalf, had been examined and cross-examined with reference to his dealings with the witness Williamson, and we are impressed with the fact that his shrewd, evasive answers are not at all consistent with innocence.

We are cited to a number of cases, among them several from our own jurisdiction, in which reversals have been had because the people were permitted, over objection, to "split their proof."

In *Porter v. People,* 31 Colo. 508, 513, 74 Pac. 879, where the question of admitting evidence in rebuttal, which should or might have been offered in chief, was raised, Mr. Justice Gabbert said: "Error is assigned on the reception of testimony on the part of the people after the defense was closed. The particular objection urged is that this testimony was not rebuttal, but testimony-in-chief. It does not appear that the defendant was prevented from meeting this testimony, or in any manner prejudiced thereby, except as it may have tended to establish his guilt. The admission of evidence as rebuttal which should properly have been introduced in chief is not error of which the party against whom such evidence is admitted can complain unless it appears that the discretion of the trial court as to the order of proof was abused to his prejudice."

In *Kingsbury v. People,* 44 Colo. 403, 404, 99 Pac. 61, the question also being upon the propriety of permitting certain evidence in rebuttal, Mr. Justice Campbell said: "The order of proof rests largely in the discretion of the trial court, and its acts in that respect will not be disturbed except in case of abuse. There was no abuse of discretion in this case."

In *Wechter v. People,* 53 Colo. 89, 98, 124 Pac. 183, this court, speaking through Mr. Justice Gabbert, said: "The

final error assigned relates to the admission of testimony as rebuttal which counsel for defendant contends should have been offered in chief, or was, in effect, a reopening of the case on the part of the people. The order in which testimony shall be admitted rests largely in the discretion of the trial court, and unless it appears that such discretion was exercised to the prejudice of the defendant, such discretion will not be interfered with on review. It appears that no prejudicial error was committed by the court in admitting the testimony complained of.''

Mr. Justice Garrigues, announcing the decision in *Shemwell v. People,* 62 Colo. 146, 157, 161 Pac. 157, has the following to say with reference to rebuttal testimony: ''Whether the court should have permitted it to be introduced on rebuttal, was a matter that lay within its sound discretion, and unless such discretion was abused so as to prejudice the rights of the defendant, it would not be reversible error. We cannot see how, under the circumstances of this case, the introduction of this evidence on rebuttal, instead of in chief, in any manner prejudiced the rights of the defendant.''

In 16 C. J. page 868, § 2186, we find: ''According to the weight of authority it is within the discretion of the trial judge to admit in rebuttal, or at the time for rebuttal, facts and circumstances which are not strictly rebuttal, and which should be or might have been offered in chief, * * * .''

From our examination of the authorities, we believe the rule to be that the admission of rebuttal testimony rests largely in the discretion of the trial court. This discretion is not subject to review unless the record shows that it was abused, thereby prejudicing the rights of the defendant and preventing him from having a fair and impartial trial. We do not find that the trial court abused its discretion in the admission of this evidence nor do we believe the defendant was prejudiced thereby.

5. The defendant asserts that the trial court erred in refusing to direct a verdict of not guilty because the

people had failed to prove all the necessary elements of the crime of embezzlement. Embezzlement is defined, broadly, as "the fraudulent appropriation of another's property by a person to whom it has been intrusted or into whose hands it has lawfully come; * * * " 20 C. J. page 407, § 1. Our statutes, section 6734, C. L. Colorado, 1921, provide: "Whoever embezzles or fraudulently converts to his own use, * * * money, goods, or property delivered to him, which may be the subject of larceny, or any part thereof, shall be deemed guilty of larceny and punished accordingly. If any officer, * * * of any incorporated company, * * * embezzles or fraudulently converts to his own use, * * * without the consent of his company, * * * any money, goods or property of such company, * * * which has come into his possession or under his care in any manner whatsoever, he shall be deemed guilty of larceny, and punished accordingly; * * * "

"Embezzlement is common law larceny extended by statute to cover cases where the stolen property comes originally into the possession of the defendant without a trespass. The word implies a fraudulent or unlawful intent." *Moody v. People,* 65 Colo. 339, 176 Pac. 476.

Before one may be found guilty of the crime of embezzlement, the following elements must be found: "First, that the thing converted or appropriated is of such a character as to be within the protection of the statute; second, that it belonged to the master or principal, or someone other than accused; third, that it was in the possession of the accused at the time of the conversion, so that no trespass was committed in taking it; fourth, that the accused occupied the designated fiduciary relation, and that the property came into his possession and was held by him by virtue of his employment or office; fifth, that his dealing with the property constituted a conversion or appropriation of the same; and sixth, that there was a fraudulent intent to deprive the owner of his property." 20 C. J. p. 414, § 4.

Every element of the crime of embezzlement was amply supported by competent evidence. The case was properly submitted to the jury, and the court did not err in denying the motion of the defendant for a directed verdict.

6. This general assignment is predicated upon alleged error in admitting incompetent, immaterial and irrelevant evidence, and the undue restriction of cross-examination. The record in this case is so long, and the assignments so numerous, as to make it impractical for us to quote from it to show the specific matter of which counsel complain. There was unwarranted liberality upon the part of the trial court in admitting evidence offered upon behalf of the people as well as upon behalf of the defendant, and for this condition of the record, both parties are to blame. We have carefully considered all of the assignments, and are convinced that the defendant was not prejudiced by the admission of any evidence of which he can now complain. We also observe from the record that counsel for the defendant was permitted the greatest possible latitude in his cross-examination, and in his zeal to protect his client, by his cross-examination, he opened the door for much of the evidence about which he now complains. If any error was committed by the court in the admission of evidence, it was not prejudicial, and there was no undue restriction of the right of cross-examination.

7. Counsel for the people, as well as defendant's counsel, repeatedly injected into the case the question of values. Both were insistent and persistent in their efforts to minimize and maximize values. It is evident from the record that counsel for the defendant was the first to bring this into the case, and we therefore decline to further consider this assignment.

8. During the defense, witnesses were called to testify to "the general reputation of the defendant in the community in which he lives, for honesty and integrity." Defendant's witnesses testified that his reputation was

good, and in rebuttal the people produced witnesses who did not credit the defendant so highly. The evidence of these witnesses, called by the people in rebuttal, is not entirely satisfactory, but the record fails to disclose a proper objection to this testimony, and we shall decline to consider error predicated upon its admission.

9. The instructions have been examined with care, and we approve them. It may be that the instructions of which counsel complain, standing alone, do not fully and completely state the law applicable to this case, but, taken together, they correctly state the law. Therefore, the court did not err in giving its instructions nor in refusing to give other instructions tendered by the defendant.

We have examined the entire record with care, and from it are forced to the conclusion that the defendant, immediately upon the organization of the company, began a course of dishonest dealings that cannot be shrouded under the cloak of good intentions or ignorance. The undisputed evidence is that during the first two years the defendant was in charge, that, in addition to all commissions and salary due him, he drew from the company the sum of approximately $30,000; that the company was in a hopelessly insolvent condition, unless one adopts the wholly fictitious and fanciful values which the defendant places upon property usually considered worthless. This course of dishonesty was consistently persisted in by the defendant until the crash came, and the stockholders were brought to the stern realization that their savings had been dissipated by the one in whom they had placed confidence and trust.

The defendant, from his shrewd, evasive answers, during direct and cross-examination, would impress one as an educated man, and his conduct leads one to conclude that he had planned a course of dishonest dealings with the company which he thought beyond the reach of the law. He simply became involved in the meshes of his own dishonesty, and would have us relieve him because

of highly technical errors which could not affect his substantial rights nor in the least prejudice him before a fair minded jury. This we will not do. The jury arrived at the only possible verdict; the judge conducted the trial fairly and impartially; his counsel were assiduous in his behalf, and did all that could be properly expected of them in the protection of their client's rights. The defendant's present predicament is due entirely to his own dishonesty, and he should not complain.

In a similar situation, Mr. Justice Sheafor used the following language (*Gizewski v. People,* 78 Colo. 123, 127, 239 Pac. 1026): "The evidence of the defendant's guilt is clear and convincing. * * * We have held that 'The rule is that technical errors are not ground for a reversal where the judgment is manifestly correct upon a review of all the evidence.' *Balfe v. People,* 66 Colo. 94, 97, 179 Pac. 137. We have also held, 'Where one knowingly and willfully violates the law, and his guilt is clearly proven, he cannot successfully rely for a reversal on technical errors occurring during the trial.' *May v. People,* 77 Colo. 432, 236 Pac. 1022."

We shall conclude this opinion by adopting the language of Mr. Chief Justice Campbell in *Short v. People,* 27 Colo. 175, 186, 60 Pac. 350: "Upon the whole case it is proper to say that the guilt of these defendants seems clear, and while this furnishes no reason for disregarding those sound and stable principles of the criminal law which should be applied to every case, still we should not be astute to find reasons for reversal where guilt so manifestly appears and where a fair trial is had."

The judgment is affirmed.

Mr. Chief Justice Whitford, Mr. Justice Adams and Mr. Justice Campbell concur.