## No. 12,591.

PEOPLE EX REL. COLORADO BAR ASSOCIATION *v.* ALLEN.
(295 Pac. 1107)

Decided December 22, 1930.   Rehearing denied February 24, 1931.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. J. S. UNDERWOOD, Attorney General, Mr. CHARLES ROACH, Deputy, Mr. OLIVER DEAN, Assistant, Mr. FRED A. HARRISON, Assistant, Mr. WILLIAM D. MORRISON, for petitioner.

Messrs. EWING & ARNOLD, for respondent.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THIS cause is before us on the report of our referee, finding respondent guilty of misconduct in his office of

attorney at law, and respondent's objections to that report.

Respondent, hereinafter referred to as Allen, helped organize the American Tax Company, which was incorporated July 9, 1925. Within a week thereafter he was elected a director thereof, served as such for about two years, and resigned. One Phenneger was the active organizer of that company and its president and general manager from its inception until March, 1928. He sold to it, for 50,000 shares of its stock, certain real estate and tax certificates. The latter, which had cost him $350, were valued in that transaction at $23,100. He first proposed to put this property in at a valuation of $150,000 and take therefor 150,000 shares of the company's stock. Those shares were of the par value of $1 each.

Before his election to membership on the board of directors, Allen was employed as general attorney for the company and was voted 10,000 shares of its stock for the first year of his services, including his organization work. This stock was not then actually issued and delivered to him. By the first of 1927 he had, on the sole authority of the president, and by consent of the secretary-treasurer, drawn over $10,000 in cash. His stock was then issued and turned back ''for application to a personal account representing funds which respondent had drawn from the treasury of the company.'' This company paid dividends when it had no net earnings. This was done each time by the vote of Allen, among others, and at least once on his motion. During 1926 and 1927 these dividends amounted to over $45,000. The entire operation of the concern shows it to have been a stock selling scheme. It paid as high as forty per cent commission to its salesmen. For his part in looting the company Phenneger was convicted of embezzlement and sent to the penitentiary, and that judgment was affirmed by this court. *Phenneger v. People,* 85 Colo. 442, 276 Pac. 983.

Allen's conduct in relation to the transactions above recited was investigated by the committee on grievances of the Colorado Bar Association, which therein acted as an arm of this court and under its rules. The committee recommended that an action in disbarment be instituted against Allen. The Attorney General was directed to proceed accordingly. Petition and answer were thereupon filed and Mr. E. E. Whitted, a member of this bar of long experience and high standing, was appointed as referee to hear the cause and report his findings. This he did and the matter is now at issue on Allen's objections to that report.

There are four charges against respondent: (1) That Phenneger's sale of property to the company was with Allen's advice and consent and was a fraud on the company; (2) that Allen's withdrawal of $10,000 of the company's funds and his discharge of that indebtedness by a credit on the books for the return of his 10,000 shares of stock was by collusion with the president and was a fraud on the company; (3) that the illegal payment of dividends was with the advice and consent of Allen and for the purpose of defrauding the public by the promotion of sales of stock; (4) that the company was operated as a stock selling swindle for the primary purpose of defrauding the purchasers of such stock, and that Allen was one of the promoters thereof and a party to that fraud.

1. The referee found Allen guilty on each of said charges, but because of our conclusions on the second and third, and the judgment we feel obliged to pronounce thereon, an examination of the others would be superfluous and we omit them.

2. Allen's defense to this charge is that he was paid in cash for his services under an arrangement with the president and the secretary-treasurer, and that he was ignorant of the credit to him of the 10,000 shares of stock on the books of the company. In this he is contradicted by those records, by the presumptions arising from his

official status, by the testimony of the secretary-treasurer, and by his own testimony in the Phenneger case.

3. Allen's defense to this charge is that he neither advised, nor consented to, the payment of dividends out of the proceeds of the sale of stock, nor had knowledge thereof. In this he is contradicted by the company's records, by the presumptions arising from his official status, by the probabilities of the situation, by the testimony of the secretary-treasurer, and by his own admission that he had knowledge of the report of expert accountants which showed there could be no "net profits" out of which only, under the by-laws, dividends could be paid.

It would be impossible for us to sustain Allen's objections to the report on these charges save by the indulgence in his favor of one of two presumptions: either that he gave no reasonable attention to the general management of a company whose trustee he was, and did not concern himself with the legality of a business which he thought he was receiving $10,000 per annum to keep straight, or that his mental obtuseness lulled his suspicions and forbade his comprehension of a gigantic fraud daily operating within his sight and hearing. Neither appeals to us, and the referee, who saw and heard him, discards them.

In a case of this kind authorities are of little value. The rule of some jurisdictions seems to be that no lawyer shall be disbarred if any possible reason can be found for imposing a lesser penalty, or none at all. Such is not our conception of the latitude allowed the profession, or of our duty to it or the state and the courts whose servant it is. Much may be forgiven one whose offenses arise from an erroneous conception of his duty to his client, or excessive enthusiasm in the performance thereof. Nothing can be claimed for him who is so deaf to the call of that duty that he cannot hear thieves ransacking that client's strong box in an adjoining room. *People v. Cary,* 80 Colo. 443, 251 Pac. 597. Allen was general attorney for the company as well as a member

of its board. He was not private counsel for its faithless president. It does not lie in his mouth to plead the distraction of trivial tasks while its coffers were being looted by its trustees and he was collecting his compensation from that loot.

The objections are overruled. We expressly approve the referee's findings of guilty on the second and third charges, and it is ordered that the name of respondent be, and the same hereby is, stricken from the roll of attorneys of this state, and he is forbidden to appear as such in any of its courts.

MR. JUSTICE CAMPBELL not participating.