Sandra Lee **HICKOK,** a/k/a Sandra Leigh Hickok, Plaintiff-Appellant,

v.

**G. D. SEARLE & COMPANY,** a corporation, Defendant-Appellee.

No. 73-1598.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 19, 1974.

Decided May 1, 1974.

of taking birth control pills manufactured by defendant. Jurisdiction arises under 28 U.S.C. § 1332 (diversity of citizenship), plaintiff being a Colorado resident and defendant being a corporation which has its principal place of business in Illinois.

Plaintiff-appellant's contention is that after using defendant-appellee's product, Ovulen-21, for several months in 1967–68, she began to experience epileptic seizures. Her specific complaint is that the product caused blood clotting; that such clotting occurred in the brain; and that this resulted in scarring of brain tissue. She further claimed that the scars later formed a focal point for brain irritation which resulted in epilepsy. The legal theories advanced were negligence, breach of implied warranty and strict liability. The cause was tried to a jury of six (April 23–May 2, 1973) and a verdict was returned for the defendant. Plaintiff's subsequent motion for new trial was denied (May 25, 1973).

In connection with the present appeal to this court two grounds are advanced:

(1) The trial court's ruling that one Dr. Altshuler, called as a rebuttal witness for plaintiff, was not allowed to discuss in his testimony a newly-published medical article relevant to the theory of plaintiff's case-in-chief.

(2) The trial court's refusal to grant a new trial, based on the same evidentiary ruling.

These in reality appear to be the same issue.

As we have pointed out, much of plaintiff's case-in-chief was directed to establishing that defendant's product produced blood clotting, and that this produced the conditions which resulted in plaintiff's epilepsy. Defendant's evidence was largely directed to establishing a lack of scientific proof that birth control pills caused blood clotting in women. One of defendant's witnesses who testified along this line was a Dr. Herbert Sise. After Dr. Sise testified and was cross-examined, the following

Gerald L. Michaud, Michaud, Cranmer, Syrios & Post, Wichita, Kan. (J. Harold Williams, Michaud, Cranmer, Syrios & Post, Wichita, Kan., and George A. Hinshaw, Aurora, Colo., on the brief), for plaintiff-appellant.

James L. Tilly, Tilly & Graves, Denver, Colo., for defendant-appellee.

Before BREITENSTEIN, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Plaintiff Sandra Leigh Hickok brought suit in United States District Court for the District of Colorado against G. D. Searle and Company for injuries allegedly sustained as a result

exchange occurred on redirect by counsel for defendant:

Q. The other material you mentioned in which Mr. Williams directed your attention to that has not been published, if I understand you correctly, this tends to confirm the lack of any relationship?

A. Yes.

Q. Do you happen to know of any publication suggesting a cause and effect, any article suggesting a cause and effect relationship, which is not published?

A. Yes.

Q. What?

A. Well, this is the Hayman's Case Control Retrospective Study on Strokes.

Q. I mean is this a new paper?

A. This is appearing I believe in the New England Journal of Medicine.

Q. Not yet published?

A. Not yet published.

Q. You do not know of any studies then, done by a competent researcher showing cause and effect?

A. I don't know any positive results, no.

Q. Does the bulk of the medical literature support the position that you have as to lack of proof of cause and effect?

A. I would say so, yes. I think what has happened is that the retrospective studies, which are done in a pretty careful way, but are wide open to certain biases, have been carried out in a statistically sophisticated way and give them an air of elegance and credibility which in my opinion is not deserved.

Plaintiff conducted no re-cross of Dr. Sise. Shortly thereafter, plaintiff's attorney discovered that the study referred to by Dr. Sise had been published, apparently prior to his testimony.[1]

At the close of defendant's case, plaintiff called Dr. John H. Altshuler of Denver as a rebuttal witness. Over objections of defendant, Dr. Altshuler was allowed to testify in rebuttal.[2] However, plaintiff proposed to have Dr. Altshuler testify concerning the contents of the New England Journal of Medicine article which Altshuler had read over the weekend. The court refused to allow detailed reference to the article in question in this rebuttal testimony. It is this refusal to allow discussion of the specific article which plaintiff now relies on as justifying reversal. We disagree.

■ Based upon an examination of the record before this court, the evidentiary ruling of the trial judge in the context presented was not erroneous for it is well established that medical textbooks, treatises and professional articles are not freely admissible in evidence to prove the substantive or testimonial facts stated therein, since they are subject to the hearsay rule. *See* Annot. 84 A.L.R.2d 1338, §§ 2, 3. While some commentators have urged liberalization of this principle, *see* discussion in § 321, McCormick, Evidence (2d Ed.), the rule

---

1. The above testimony of Dr. Sise occurred on April 27, 1973 (Friday). The article in question appeared in the April 26 issue of the New England Journal of Medicine. Plaintiff's attorney became aware of the existence of the article over the weekend of April 28–29.

2. Defendant's objections to Dr. Altshuler's testimony originally rose from the fact that Dr. Altshuler had initially been endorsed as a witness in the case-in-chief. Because defendant had not had adequate time to prospectively determine the nature of Altshuler's testimony, plaintiff chose to withdraw him as a plaintiff's witness rather than delay the trial. Defendant therefore contended that through Dr. Altshuler plaintiff was attempting to put on in the guise of rebuttal, testimony that properly belonged in the case-in-chief and which plaintiff had elected not to utilize.

of inadmissibility obtains both in Colorado and in this Circuit at the time of trial. Denver City Tramway v. Gawley, 23 Colo.App. 332, 129 P. 258 (1912); United States v. One Device, etc., 160 F.2d 194 (10th Cir. 1947). It is true that expert witnesses are sometimes allowed to testify as to hearsay matters by discussing published materials, *see* United States v. Sowards, 339 F.2d 401, 402 (10th Cir. 1964), but this is allowed in our Circuit solely to establish the basis for the expert's opinion, and not to establish the veracity of the hearsay matters themselves. Where testimony as to hearsay is received for such a limited purpose, its effect is to be carefully controlled by the trial judge, including the giving of limiting instructions to the jury. United States v. Sowards, *supra*.

█ In the instant case the trial judge was quick to perceive that plaintiff's principal interest in producing Dr. Altshuler's testimony concerning the newly published article was to bring before the jury testimony as to the substantive content of the article, apparently supportive of plaintiff's case—which plaintiff had not been aware of and

hence had not produced in her case-in-chief.[3]

█ The determination of what constitutes proper rebuttal evidence is a matter which is within the sound discretion of the trial judge. French v. Hall, 119 U.S. 152, 7 S.Ct. 170, 30 L.Ed. 375 (1886); Phenneger v. People, 85 Colo. 442, 276 P. 983 (1920); 29 Am.Jur.2d Evidence, § 269. The exercise of such discretion will not be disturbed on appeal. It is not as if Dr. Altshuler played some part in the preparation of the New England Journal article or the studies upon which it was based. Moreover, its publication only days prior to his testimony precluded the possibility that it substantially contributed to the formation of his own opinion concerning the relationship of birth control pills to blood clotting. Hence, the admission of his testimony outlining testimonially the facts of the article would have constituted a clear violation of the hearsay rule.

Accordingly, we conclude that the ruling excluding this article was eminently correct.

The judgment is affirmed.

---

3. The argument of counsel seeking admission of Dr. Altshuler's testimony showed that he sought to get testimonial value from it.

"I think we have a right to show through this witness, which we intended to do, *that this very important article showing a nine fold increased risk of thrombosis affecting the brain in women taking oral contraceptives* was in fact published in the very journal that Dr. Sise says supports their position, so we did not know Dr. Sise was going to get into papers or statistics or that he would mention, although backhandedly and through the backdoor he did mention, the New England Journal article, and we were leading up to this in this witness and we had about five or ten minutes more of direct examination." R., Vol. III, p. 18. (Emphasis added.)

A further indication of plaintiff's intention in this regard is demonstrated by an incident

during cross-examination of Dr. Clough, one of defendant's witnesses, on April 30, after plaintiff's attorney had discovered the existence of the article in question:

Q. Dr. Clough, you are aware, are you not, that thrombosis or clotting problems affecting the brain occur about nine times as often in women taking the pill as in those who do not take the pill?

MR. TILLY: If the Court please, I am going to object. There has been no evidence of that at all.

THE COURT: Well, I don't recall such evidence. Can you refer to it in the record?

MR. WILLIAMS: There is nothing in the record yet, Your Honor.

THE COURT: Well, then the objection is sustained to the question.