## No. 9976.

### McKee v. The People.

Decided February 7, 1921.

Plaintiff in error was convicted of murder of the first degree.

### Reversed.

1. Criminal Law—*Impeachment of Witnesses.* Impeaching questions must not be upon collateral, irrelevant or immaterial matters. The test of whether a fact inquired of in cross examination is collateral, is: Would the cross examining party be entitled to prove it as a part of his plea? If not, the matter is collateral to the issue.

2. Appeal and Error—*Evidence—Cross Examination.* In the trial of a criminal case, it was error to permit the district attorney on cross examination of a medical expert, to ask if he had not expressed the opinion to designated persons, that the defendant was guilty, when he had expressed no opinion on the subject on direct examination; it was also error, after he had answered the question in the negative, to permit the prosecution to introduce evidence to show that he had expressed such an opinion out of court.

3. Criminal Law—*Evidence—Opinion as to Defendant's Guilt, Incompetent.* In the trial of a criminal case, the opinion of no person as to the defendant's guilt, is competent evidence, that being the very matter the jurors are to pass upon.

*Error to the District Court of Yuma County, Hon. L. C. Stephenson, Judge.*

Mr. Edwin H. Park, Mr. M. M. Bulkeley, for plaintiff in error.

Mr. Victor E. Keyes, Attorney General, Mr. Charles H. Sherrick, Assistant, for the People.

Mr. Justice Teller delivered the opinion of the court.

Plaintiff in error was found guilty of first degree murder upon an information charging him with the murder of his wife, on or about the 5th of April, 1920.

The principal grounds of reversal argued are that the court abused its discretion in permitting evidence as to a wound received by the deceased about February 13, 1920, before evidence was offered to establish a *corpus delicti;* and that it erred in permitting the state, upon cross examination of Dr. Bennett, a witness in behalf of defendant, after asking him whether or not he knew two men by the name of Richards, to put the following question to him. "Q. I will ask you if you did not state to both those gentlemen that after having investigated this case thoroughly you were of the opinion absolutely that the defendant was guilty?" Objection to the question was overruled, and the defendant answered in the negative.

Thereafter, the two persons mentioned were called by the state in rebuttal, and testified that Dr. Bennett had stated to them his belief in defendant's guilt.

Upon direct examination Dr. Bennett had testified that he was a physician and surgeon, and that he had been called upon to examine over one hundred cases of death by violence. In a hypothetical question, based upon the evidence as to the wound of February 13th, he was asked what, in his opinion, would be the after effects of such wound. In another hypothetical question, based upon the evidence as to the condition of the body of the deceased when found, and during some time thereafter, he was asked at what time, in his opinion, the shot had been fired, if it killed the person

before five o'clock in the afternoon, the time at which the body was discovered. He was then asked some questions in regard to the time that *rigor mortis* might be expected to set in, how long blood would be likely to flow, and how long it would be before the body would become cold, under the conditions shown in evidence.

The witness had made no reference to any findings he had made during his investigation, nor had he given any expression of opinion upon matters other than those above stated.

The question propounded to him, then, could in no sense be used as a basis for impeachment. It was not proper cross examination, and was collateral to the issue. That being so, the state was bound by his denial.

The question of defendant's guilt was the very matter which the jurors were to pass upon, and they were to determine it from evidence of facts and circumstances bearing upon that issue. The opinion of no person as to defendant's guilt was competent evidence. The facts to which Dr. Bennett had testified were proper for the consideration of the jury. They were not such matters as are within the knowledge of people generally, and he was therefore produced as an expert, with special knowledge of the subjects under consideration, to testify concerning them, to enable the jurors to draw proper conclusions from the special circumstances in evidence. Dr. Bennett's opinion as to what conclusions should be drawn from other facts, which could be determined by the jury as well as by himself, was of no consequence, and not proper for the jury to consider.

In *Askew v. The People,* 23 Colo. 446, 48 Pac. 524, the court quotes with approval from Wharton's Criminal Evidence, Sec. 484, as follows:

"The test of whether a fact inquired of in cross-examination is collateral, is this: Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?"

In Section 1003 Wigmore on Evidence, it is said,

The true test "is that laid down in *Attorney-General v.*

*Hitchcock* (1 Exch., 99) :   Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?"

If it could not, then the matter is collateral to the issue.   In this case the evidence did not tend to contradict any statement made by the witness, and related to an expression of opinion which was obviously not admissible.   This has several times been announced as the test in such cases.

In *Mitsunaga v. The People,* 54 Colo. 102, at 109, 129 Pac. 241, 244, the court said, referring to questions asserted to have been improper:

"Prior statements of a witness about matters upon which he has not testified in court, cannot be shown.   There must be a material inconsistency or contradiction between his evidence in court, and his alleged previous statements out of court, and the impeaching question must not be upon collateral, irrelevant or immaterial matters; but must be upon matters material to the issue.   The test as to its materiality is said to be:   If the statement which it is alleged the witness made out of court, was true, would the impeaching party be entitled to prove it in support of his case?"

In *Seavy v. Dearborn,* 19 N. H. 351, the court, discussing the latitude allowed in cross examination, said:

"In the first place, it does not extend so far as to authorize a party to prove, by a witness on cross examination, things positively improper to be proved at all; and, secondly, he cannot, for the purpose of discrediting a witness, contradict, by other evidence, his statements that are improper or immaterial.   In other words, he may, for the purposes before indicated (i. e., to test a witness' memory, capacity and veracity,) ask questions not strictly relevant to the issue, provided they do not tend to elicit testimony that is injurious or improper."

It is clear that the court erred in overruling the objection to the questions propounded to Dr. Bennett on cross examination, and in permitting the state to introduce testimony to contradict him on that point.   These errors were manifestly prejudicial.

It is further urged that the case should be reversed because during the examination of one witness all persons excepting the jury, the court officers, the defendant and the attorneys engaged in the trial, were excluded from the court room. This was done apparently by the consent of counsel for defendant. They now urge that the right to a public trial is not personal to the defendant; that the public has an interest in the matter, so that the right may not be waived. From the record it does not appear that there was any good reason for this wholesale exclusion, but we do not find it necessary to determine whether or not, under the circumstances named, the defendant has any right to complain. As the judgment must be reversed for the reasons heretofore stated, and the other errors alleged may not be repeated, if they are errors, we need not consider them.

The judgment is reversed.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE ALLEN concur.