No. 15,130.

BASHFORD $v$. THE PEOPLE.
(135 P. [2d] 516)

Decided March 29, 1943.

Mr. CHARLES T. MAHONEY, Mr. CHARLES A. MURDOCK, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was charged jointly with two others with conspiracy to commit abortion. By agreement a severance was ordered and she was separately tried. On a verdict of guilty she was sentenced for a term of four to five years in the penitentiary. To review that judgment she prosecutes this writ. Her fifty-three assignments are grouped and argued under seven headings. These we further condense, rearrange, and so consider: (1) Misconduct of the trial judge; (2) erroneous rulings on the evidence; (3) erroneous rulings on instructions; (4) insufficiency of the evidence.

1. It is contended that certain remarks, some

twenty in all, addressed by the trial judge either to counsel, or defendant on the stand, were prejudicial. Those addressed to counsel were generally provoked by persistent effort to present improper, or exclude proper, evidence; principally the latter. The following are fair examples. "The purpose of a trial is to develop the facts, not prevent it." "The court is determined that this jury shall hear the relevant facts in this case." "We want to get at the facts and that is what the jury is entitled to have."

Those addressed to defendant on the stand were provoked by defendant's improper conduct and her apparent determination to disregard the rulings and inject improper and self-serving matter. The following are fair examples. "She (defendant) was allowed considerable latitude in telling her story. She may be cross-examined on it, and she must answer and not tell all about something else." "She was given the benefit of denial, and that is all in there, and she wants to make a speech about it." "You are not answering the question. Nobody asked you that question." "It will be stricken out, because it is a deliberate attempt by the witness to evade the question. She has been doing that right along, taking up the time of the court, and the court is getting pretty well fed up on it."

We must not be understood as approving all this. Some of it, at least, might have been more judicial, but we cannot say that it probably influenced the jury and certainly it indicated no opinion as to defendant's guilt. It does not constitute reversible error. *Rogers v. People,* 104 Colo. 594, 94 P. (2d) 453; *Phenneger v. People,* 85 Colo. 442, 276 Pac. 983; *Wilder v. People,* 86 Colo. 35, 278 Pac. 594.

In view of the contention that the trial judge showed prejudice it seems appropriate to note that upon the denial of a motion for a new trial the prosecuting attorney stated that defendant had "no previous record" and that if she desired to apply for probation "We have no

objection." Advised by her counsel that she did not she was then called before the court and the judge observed that she had never been in trouble before or had any criminal charge against her and being a first offender was entitled to probation. The prosecutor acquiesced and after sentence the judge stated in substance that if she prosecuted error and failed of reversal, leave to apply for probation would still stand.

2. Certain evidence was objected to as hearsay. So far as it was of any moment it was later produced on direct. If Smith says, "Jones told me he was there," that may be pure hearsay and its admission, over objection, error. But if Jones then takes the stand and says, "I told Smith I was there and I was," no possible prejudice can result.

Defendant was the office assistant and secretary of Dr. C. While the doctor was absent and she was in charge one Miss G, presumably pregnant, came for relief. Defendant, acting for the doctor, agreed upon a fee of $100. $50.00 was paid in cash and a note for $50.00 executed and delivered by one S, a friend of G. Mc, an attorney, was called to show attempts of the doctor to collect this note. He testified, "I represented Dr. C in connection with an account of his involving S." S testified he received a bill from Dr. C. Suher, an investigator for the pharmacy department of Colorado, testified he obtained from Mc Exhibit D, a copy of a letter from the latter to S. It states that the doctor had left the account of $50.00 against S with Mc for collection, and inquires concerning the desire of S. Exhibit D, admitted over objection, shows the activity of Dr. C in collecting the note arranged for and taken by defendant as a part of the consideration for the operation. Its identification was not perfect, but since it was apparently genuine, and if so tended to establish a link in the case, and since defendant's counsel did not see fit to cross-examine concerning it, we fail to detect error.

It seems appropriate to interject here that counsel who

represented defendant on the trial was not one of those here appearing for her.

■■ Defendant was questioned in the office of the district attorney. Interrogatories and answers were taken by a stenographer, transcribed, and signed by defendant. This document, Exhibit B, was admitted in evidence. It was objected to on the ground that it was not voluntary and on that question a hearing was had in chambers, out of the presence of the jury, and defendant and other witnesses examined. Whereupon the objection was overruled and Exhibit B admitted. It is said that at the time these statements were made defendant was ill, was denied counsel, held incommunicado, and threatened. She was taken into custody May 26 and released May 28. The statement is dated May 27. She testified in chambers that several weeks after her discharge she wrote out in detail her recollection of all that occurred during her incarceration and examination. This writing, Exhibit 1, she proposed to read from and otherwise use as testimony or memoranda to show the involuntary character of Exhibit B. An objection thereto was sustained and that ruling was clearly correct. Exhibit 1 was self-serving, palpably open to the objection of deliberate manufacture, and the time of its composition was too remote. Even assuming its truth and good faith no necessity for its use appears. So far as the record discloses defendant could give the facts as well without it. With one exception it contains the sole evidence of the involuntary character of Exhibit B. That exception is the testimony of a physician, hypothetically based, to her probable incapacity. On the same basis another physician, equally qualified and informed, expressed a contrary opinion. It thus appears the admission of Exhibit B rested in the sound discretion of the court and no abuse appears. Furthermore the whole question of the circumstances surrounding the taking of Exhibit B, and hence the weight to be given it, was submitted to the jury by instruction No. 9.

■ A witness for the people, one Humphreys, an investigator for the district attorney, who propounded the questions in Exhibit B, was asked if defendant did or did not say "she had committed this crime." Objections thereto were overruled and he answered, "She told us that she had." In support of the contention that this ruling was error we are cited to *McKee v. People,* 69 Colo. 580, 195 Pac. 649. The authority is not in point. In that case the witness drew his conclusions from facts. Here the witness purported to give facts. Conceding that he was interpreting the language of Exhibit B the answer is, "No prejudice," because his interpretation is the only one of which Exhibit B is capable. The simple truth is that if the statements made in Exhibit B are true it irrevocably establishes defendant's guilt.

■ 3. Several alleged errors involving instructions, given and refused, are called to our attention. One only of these appears to have been seriously considered by counsel, or is deserving of such here. Defendant's requested instruction No. 3 required, as indispensable to a verdict of guilty, a prior finding that Miss G was in fact pregnant. Instruction No. 1 stated the charge as conspiracy to commit an abortion on Miss G "being then and there a woman with child." Instruction No. 6 advised the jury that every material allegation of the information must be established beyond a reasonable doubt. Instruction No. 12 clearly and correctly defined pregnancy. Instruction No. 14 reads in part: "If you believe from the evidence beyond a reasonable doubt that the witness * * * was pregnant * * * and a miscarriage was caused or procured * * * it is sufficient." One of the most hotly contested questions in the case, and to which most of the testimony was directed, was this very question of pregnancy or no pregnancy. In the light of this fact, and the instruction above quoted, it seems impossible that the jurors did not clearly understand that existing pregnancy was one of the material

facts to be found beyond a reasonable doubt. No authority on this subject is cited, either by prosecution or defense, and we have found none directly in point. However, a similar question was before the Supreme Court of Illinois and its resolution seems to rest upon sound reasoning, equally applicable here. *Ohio & M. Ry. Co. v. Porter*, 92 Ill. 437, 441.

 4. Both sides assume that there can be no conspiracy to commit abortion if there be no pregnancy. The entire argument of the defense on the evidence is to the effect that it failed on this point. There is no direct evidence of absence of pregnancy, hence no conflict. The contention is that the evidence is so defective, so inconclusive, and so dependent upon the opinion of one witness based upon the opinion of another, as to be no evidence. Abstract and analysis would here be interminable and futile. The following will suffice:

The patient had passed her "period" by ten days and thought she was pregnant. She was accordingly examined by Dr. Nelson. He reached the same conclusion but for certainty he submitted a specimen of her urine to Dr. Stahl for a laboratory test. The report confirmed his conclusion. The qualifications of these physicians are not disputed. Acting on their decision the patient sought the services of Dr. C. At his office she met defendant, made the arrangements hereinbefore recited, and was sent to a hospital where she received some kind of treatment for something and was relieved of the "obstruction" troubling her. The principal confusion arises from the test, the report of Dr. Stahl, the dependence put upon it by Dr. Nelson, and the fact that neither, alone, could tell the whole story. The practice followed was that usual by physicians in such cases. Details are all recited and no probability of error appears or is suggested. Dr. Nelson testified that the odds in favor of accuracy were nine to one and "from a physical examination, plus the test, I think she was pregnant." The sample of urine furnished by Dr. Nelson to Dr. Stahl

was definitely traced. The latter described his test and stated that it showed "positive," "That occurs in pregnancy." "It is not infallible." Whatever possibility of error existed was definitely developed by cross-examination.

We think it clear from the foregoing that definite evidence of pregnancy was before the jurors. The weight thereof was for them, not us.

Finding no reversible error in the record the judgment is affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE HILLIARD dissenting.

I shall never be convinced that judicial fairness has obtained in the conduct of a trial, where, as here, the judge was constantly speaking harshly or disparagingly to or of the defendant, and berating and upbraiding her counsel in the manner disclosed by this record. The instances of the judge's offending, quoted in the court opinion, and stated there to be "fair samples" of "some twenty" such outbursts—neither the worst nor an over-count, as my study convinces—constitute material error of gravest import. It is much more important, the spirit of law in a free country observed, that a fair trial be accorded than that conviction be made certain. I regret that in the interest of some needed fundamental declarations, we have not made avail of the writ here.